[No. 26646-2-I.   Division One.   January 27, 1992.]

TEWELL, THORPE & FINDLAY, INC., P.S., ET AL, *Appellants*, v. CONTINENTAL CASUALTY COMPANY, *Respondent*.

*Michael T. Watkins* and *Tewell & Findlay,* for appellants.

*Warren E. Babb, Jr.,* and *Lane Powell Spears Lubersky,* for respondent.

AGID, J. — This appeal arises out of a declaratory judgment action challenging the denial of coverage by Continental Casualty Company under a professional liability policy issued to the appellant law firm. Specifically, appellants Tewell, Thorpe & Findlay, Inc., P.S. (Tewell Thorpe) and Richard J. Thorpe appeal the trial court's rulings (1) declining to hold that the disputed language of the policy was ambiguous as a matter of law, and (2) granting respondent Continental Casualty's motion in limine excluding evidence regarding the dismissal of the underlying legal malpractice claim. We affirm the trial court.

Richard Thorpe was retained by Ernest Myers in August 1982 to represent Myers in connection with the purchase of a piece of property that Myers intended to develop as a mobile home park. Thorpe requested a preliminary title report from Pioneer National Title Insurance Company (Pioneer Title) in connection with the real estate closing. On receiving the 4-page report, Thorpe noticed a problem with the legal description on the first page. He did no more than glance at the remainder of the report because it was his opinion that the initial problem might prove insurmountable. He thus failed to note that page 3 of the report indicated the presence of two easements on the property.

Because there was some urgency with respect to the timing of the closing, Thorpe contacted Chicago Title Insurance Company (Chicago Title) and requested a new title report. Although he informed it of the problem on page 1 of the Pioneer Title report and provided it with a copy of that page, he did not provide it with a copy of the remainder of the report. When asked by a representative of Chicago Title whether he had missed anything in the Pioneer Title report, Thorpe replied that he believed he had gotten everything. The report and policy subsequently issued by Chicago Title

made no mention of the easements that were listed in the Pioneer Title report.

Myers discovered the existence of the easements in October 1982, alleged that they prevented him from developing the purchased property as a mobile home park and, through Thorpe, demanded payment from the title insurer, Chicago Title. Thorpe and Chicago Title then exchanged several letters concerning the circumstances giving rise to Chicago Title's issuance of the policy and when Thorpe had become aware of the easements. Chicago Title informed Thorpe in August 1983 that it might implicate him if the claim resulted in litigation.

The professional liability insurance policy issued by Continental Casualty to Tewell Thorpe took effect in January 1984 and remained in effect throughout 1985. On October 28, 1985, Myers filed a malpractice claim against Thorpe arising out of the real estate transaction. Tewell Thorpe tendered the defense of Myers' claim to Continental Casualty, which initially accepted the defense. After reviewing the underlying file, however, Continental Casualty informed Tewell Thorpe that it was denying coverage and would not defend the action. Continental Casualty relied on the firm's failure to identify the underlying litigation as a potential claim at the time it applied for coverage for 1984 and again when it applied for renewal for 1985. The insurer based its position on the 1983 letter from Chicago Title stating that it might implicate Thorpe if the claim resulted in litigation. Continental Casualty withdrew from the litigation in December 1986. Myers' claim against Thorpe was ultimately arbitrated and dismissed because Myers failed to call an expert witness to testify that Thorpe's conduct was not that of a reasonably prudent attorney under the same or similar circumstances.

Tewell Thorpe brought this declaratory judgment action against Continental Casualty in 1987, alleging that Continental Casualty had wrongfully denied coverage for Myers' claim under the policy issued to Tewell Thorpe. The trial court refused to find that the language of the exclu-

sionary clause was ambiguous as a matter of law and excluded evidence regarding dismissal of the underlying legal malpractice claim. The question posed to the jury — whether a reasonable person would have known, based on the information available to him at the time, that Thorpe's acts or omissions in handling the Myers transaction might be the basis for a claim — was answered in the affirmative, and the trial court entered its judgment of no coverage based on that verdict. The firm's motion seeking reconsideration of the trial court's rulings with regard to both of these issues was denied.

## I
### AMBIGUITY OF THE EXCLUSION CLAUSE

Continental Casualty denied coverage with respect to Myers' claim based on exclusion D of the policy, which provides:

> This insurance does not apply under Coverage A to:
>
> . . . .
>
> D. a **claim** arising out of acts or omissions occurring prior to the effective date of the first policy issued to the **named insured** or any **predecessor firm** by this Company and continuously renewed thereafter, if any **insured** on the effective date knew or could have reasonably foreseen that such acts or omissions might be the basis for a **claim**.

Specifically, Continental Casualty believed that, based on the information available to Thorpe prior to January 1, 1984, the effective date of the policy, Thorpe reasonably could have foreseen that his acts or omissions with respect to the Myers real estate transaction might be the basis for a claim.[1]

In the trial court and here, Tewell Thorpe argued that the reference in the exclusion clause to a claim, which occurs twice in the clause, was ambiguous on two grounds. First, the phrase is ambiguous because the second reference

---

[1] A "claim" is defined in the policy as follows:

" **'Claim'** means, under Coverage A, a demand for money or services or the service of a suit or institution of arbitration proceedings naming the **insured** and alleging an **insured** act, omission or activity."

to "a claim" could mean either any claim or the claim that actually materialized.[2] Second, Thorpe argued that it is implicit in the language of the exclusion clause that a claim is one which is meritorious in the eyes of the insured because an attorney could not reasonably be expected to anticipate a groundless claim. The trial court denied the motion, ruling that each of these arguments rested on an unreasonable and strained reading of the clause. Because the interpretation of insurance policy language is a question of law, we review the trial court's ruling de novo. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

An ambiguity exists when a clause, on its face, is fairly susceptible to more than one reasonable interpretation. *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 198, 743 P.2d 1244 (1987). Language in insurance policies is construed according to its " 'popular and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended'." *Stoughton v. Mutual of Enumclaw*, 61 Wn. App. 365, 368, 810 P.2d 80 (1991) (quoting *Lawrence v. Northwest Cas. Co.*, 50 Wn.2d 282, 285, 311 P.2d 670 (1957)); *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974). The policy should be given a fair, reasonable, and sensible construction such as would be given the contract by the average person purchasing insurance. *Roller*, 115 Wn.2d at 682; *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

Ambiguous terms, on the other hand, are given the construction most favorable to the insured. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976); *Dairyland*, 83 Wn.2d at 358. Because the purpose of insurance is to insure, exclusionary clauses are construed against the insurer with special strictness. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509

---

[2]Thorpe argued that the second reading is the correct one.

(1983), *modified on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984). A court may not, however, give an insurance contract a "strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion". *Morgan*, 86 Wn.2d at 434. Similarly, a court may not create an ambiguity where none exists. *Morgan*, 86 Wn.2d at 435; *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn.2d 38, 44, 491 P.2d 641 (1971) (the rule that insurance contracts are construed in favor of the insured should not be perverted to have the effect of making a plain agreement ambiguous); *Sperry v. Maki*, 48 Wn. App. 599, 601, 740 P.2d 342 (a court may not modify the unambiguous meaning of language contained in an insurance policy under the guise of construing it), *review denied*, 109 Wn.2d 1014 (1987).

Here, the trial court correctly ruled that the interpretation of the phrase "a claim" suggested by Thorpe was not a reasonable interpretation.[3] "A" is simply an indefinite article. The context in which the second reference to "a claim" is made does not in any way suggest that "a" should be given anything other than its popular and ordinary meaning. The meaning suggested by Thorpe — "the claim that actually materialized" — would have required the use of the definite article "the" or a word like "such", both of which were used selectively in other exclusionary clauses of the same policy. Because this language is susceptible only to one reasonable interpretation, it is not ambiguous.

Further, the language of the exclusionary clause does not require the prediction of claims with absolute certainty or exactitude. Rather, the focus of the clause is on the underlying "acts and omissions" that are the subject of a dispute

---

[3]Several cases in other jurisdictions have held that language similar to that at issue here is not ambiguous. *See, e.g., Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218 (5th Cir. 1986); *Phoenix Ins. Co. v. Sukut Constr. Co.*, 136 Cal. App. 3d 673, 676-77, 186 Cal. Rptr. 513, 515 (1982); *Bellefonte Ins. Co. v. Albert*, 99 A.D.2d 947, 948, 472 N.Y.S.2d 635, 636-37 (1984); *Giles v. St. Paul Fire & Marine Ins. Co.*, 62 A.D.2d 1138, 1139, 404 N.Y.S.2d 190, 192 (1978).

which might give rise to a claim. The insurer is inquiring about any such acts or omissions in order to allow it to realistically assess its risk and establish an appropriate premium for coverage. Here, the correspondence between Thorpe and Chicago Title prior to January 1, 1984, makes it apparent that Thorpe's acts or omissions with respect to that transaction were already the subject of some dispute among Thorpe, his client, and Chicago Title. The fact that Chicago Title was contesting its obligation to pay Myers' claim under the title insurance policy raised at least the possibility that Myers might look elsewhere at some point to make good his losses. Under the terms of the exclusion clause, Thorpe was not required to predict which of the parties to the dispute would bring the claim nor what its precise nature might be. The firm was required only to notify the insurer that a claim might arise out of that transaction.

■ The language of the exclusion clause also does not imply that the potential claims of which the insurance company must be informed necessarily have merit. Under the terms of its policy, Continental Casualty had a duty to defend its insured even if a claim were groundless, frivolous or fraudulent. The foreseeability of a claim is distinct from the question of whether a foreseeable claim has any merit. This is not a case in which the claim was so obscure or groundless that it simply would not occur to the insured to report it. As the jury found, Thorpe could reasonably have foreseen that his acts or omissions concerning the issuance of the title reports might give rise to a claim, meritorious or not. The trial court correctly rejected appellants' ambiguity argument.

## II
### EXCLUSION OF EVIDENCE

We further hold that the trial court properly excluded evidence of the dismissal of the underlying malpractice claim. Appellants argue that the trial court erred in excluding that evidence on two grounds: (1) the excluded evidence was admissible to show that the Myers claim was not

reasonably foreseeable by Thorpe, and (2) appellants consequently were unable to effectively argue their theory of the case to the jury; *i.e.*, that a claim found to be without merit is less foreseeable than a meritorious claim.

■ Decisions as to the admissibility of evidence are within the discretion of the trial court and are reversible only for an abuse of that discretion. *Houck v. UW*, 60 Wn. App. 189, 803 P.2d 47 (citing *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 530, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987)), *review denied*, 116 Wn.2d 1028 (1991). Thus, the trial court's rulings are reversible only if no reasonable person could have so ruled. *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979). In evaluating proffered evidence, a court must weigh both the probative value of the evidence to the proponent's case and the potential that the evidence will prejudice the other party or confuse the jury. ER 403; *Goodell v. ITT-Federal Support Servs., Inc.*, 89 Wn.2d 488, 493, 573 P.2d 1292 (1978).

The issue here was what Thorpe knew prior to January 1, 1984, that arguably enabled him to anticipate that some claim arising out of his acts or omissions with respect to the Myers transaction might be brought. Thorpe does not dispute that there was a disagreement with Chicago Title and that the existence of the easement made it impossible for his client to use the property as he had intended. The eventual dismissal of the malpractice claim has little or no probative value with respect to the question of whether Thorpe's knowledge of the dispute made a claim foreseeable. In fact, the evidence is potentially prejudicial since the focus of the inquiry at trial was not what Thorpe *would* have anticipated based on hindsight, but what he *should* have anticipated based on the information available to him at the time. Further, the jury might have been confused by and therefore drawn incorrect inferences from the proffered evidence. The fact that the underlying claim was dismissed

does not in and of itself mean that the claim was frivolous.[4] In any event, Continental Casualty would have had an obligation to defend a nonexcluded claim regardless of whether or not it was frivolous.

Finally, the firm contends that the trial court's evidentiary ruling prevented it from effectively arguing its theory of the case. Neither side has provided this court with the relevant portions of the record of closing argument. The trial court's ruling, however, merely prevented the firm from arguing that the claim was not foreseeable because, as it characterized the arbitration decision, it was dismissed as having no merit. As we have noted above, however, the arbitrator's after-the-fact determination is not probative of whether Thorpe should have known there was a potential problem with the Myers transaction. The ruling would not have prevented the firm from arguing that the claim was unforeseeable on other grounds, for example, because it was unaware that there were any problems with the transaction or thought the client was completely satisfied. Neither of these arguments was available, of course, because Thorpe knew in 1983 that this was not the case.

The court did give the following instruction:

> In the case of the title insurance policy, the title insurer undertakes to indemnify the insured if the title turns out to be defective. That is the purpose of procuring the insurance and knowledge of defects in the title by the insured in no way lessens the liability of the title insurer.

Based on this instruction, the firm could have argued that, no matter what Thorpe's role in the transaction was, Chicago Title's obligation under the policy it issued to Myers was unchanged because any knowledge of defects in the title on Thorpe's part did not preclude coverage under the policy. Thus, any claim against the firm would necessarily be without merit and thus unforeseeable. As this argument was available under the instructions, the court's

---

[4]This is particularly true because it appears at least one basis for the dismissal was Myers' failure to present expert testimony on the standard of care.

ruling did not prevent Thorpe from effectively arguing its case to the jury.

Affirmed.

GROSSE, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied March 2, 1992.