[Nos. 14988-9-III; 15013-5-III.   Division Three.   October 9, 1997.]

JOSE MENDOZA, ET AL., *Appellants*, v. RAMIRO RIVERA-CHAVEZ, ET AL., *Defendants*, LEADER NATIONAL INSURANCE, *Respondent*.

LEADER NATIONAL INSURANCE, *Respondent*, v. RAMIRO RIVERA-CHAVEZ, ET AL., *Appellants*.

*Theodore A. Roy* and *Kevin M. Roy* of *Roy & Boutillier*; and *D. Bruce Morgan (Michael B. Dye* and *Steven R. Paul* of *Law Offices of Michael B. Dye*, of counsel), for appellants.

*James D. Maloney III* of *Weeks & Skala*, for respondent.

BROWN, J. — The central issues here are whether automobile insurance exclusions for "migrant workers" or for the "commission of any felony" are enforceable. We decide both exclusions are ambiguous and against public policy in the context of these facts. We reverse the trial court's grant of summary judgment to the insurance company based upon the migrant workers exclusion, and affirm the trial court's denial of summary judgment to the insurance company based upon the felony exclusion. Accordingly, this matter is remanded for trial.

## FACTS

On September 27, 1993, Ramiro Rivera-Chavez (Chavez), an Oregon resident, drove across the centerline of State Route 97 in Yakima County and collided head-on with a

truck occupied by Elisa and Jose Mendoza. Four passengers, Salvador Valdovinos-Ruiz, Alejandro M. Munos-Mancinas, Javier S. Beltran, and Evelio Ochoa Ramirez (the passengers) were riding in the car driven by Mr. Chavez. Mr. Ochoa Ramirez died as a result of the accident, and the other occupants of both vehicles were seriously injured.

The day before the accident, Mr. Chavez and his passengers had driven from Oregon to look for work picking apples in Yakima Valley. The accident occurred when they were returning to Oregon without having found work in Washington.

In February 1994, Mr. Chavez entered an *Alford*[1] plea of guilty to one count each of vehicular assault and vehicular homicide, both felonies, admitting he had been intoxicated at the time of the accident.

Mr. Chavez was insured under a Leader National Insurance (Leader National) policy. He was driving a car owned by Teresa Bernal, an Oregon resident insured by Atlanta Casualty. The Leader National policy contains an exclusion of coverage while the vehicle is being used to transport certain classes of people, including migrant workers. It also contains a clause excluding from coverage injuries sustained when the vehicle is being used in the commission of a felony. The policy does not define the terms "migrant workers," "transport," or "commission of any felony."

The Mendozas settled a Yakima County suit with Atlanta Casualty, Ms. Bernal's carrier. Following settlement, the Mendozas garnished Leader National, which denied holding money or property for Mr. Chavez. In a separate suit, Leader National sought a declaratory judgment to determine coverage under its policy as to claims by both the Mendozas and the passengers. The court consolidated the garnishment proceedings and Leader National's declaratory action. Leader National moved for summary

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

judgment in both matters, contending both the migrant workers and felony exclusions precluded coverage. The trial court denied coverage based on the migrant workers exclusion only and entered judgment in favor of Leader National in both the garnishment and the declaratory actions. The court awarded Leader National $3,000 for attorney fees under the garnishment.

The Mendozas appeal the order granting summary judgment to Leader National.[2] Leader National cross-appeals the trial court's failure to grant summary judgment on the basis of the felony exclusion and the failure to award additional attorney fees under the garnishment laws.

## MIGRANT WORKERS EXCLUSION

The first substantive issue is whether the insurer is entitled to enforcement of the exclusion relating to transporting migrant workers. The exclusion provides:

> This coverage does not apply to bodily injury or property damages if your covered auto is used to transport nursery or school children, migrant workers or hotel/motel guests. This exclusion does not apply to your children or children engaged in a car pool arrangement with you.

1. *Public Policy.* The first question we decide is whether the migrant workers exclusion as applied under our facts violates public policy. Generally, an exclusion violates public policy if it does not have a relationship to the increased risk faced by the insurer or denies coverage to innocent victims without good reason. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 343-44, 738 P.2d 251 (1987). There is nothing in this record to indicate any increased automobile underwriting risk because a person may be a migrant worker.

---

[2]The Mendozas contend the exclusion issues should be decided under Oregon law, however, because we conclude the exclusions do not bar these plaintiffs' claims under Washington Law, we do not reach this issue. We note, however, that we see no conflict between the states. *Stamp v. Department of Labor & Indus.*, 122 Wn.2d 536, 540, 859 P.2d 597 (1993).

An ambiguous and overbroad exclusion violates public policy. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209, 643 P.2d 441 (1982). The financial responsibility act (FRA) "creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others." *Wiscomb*, 97 Wn.2d at 206. The migrant workers exclusion would prevent significant numbers of lawfully employed people and their families from complying with our financial responsibility law with resultant harm to potential innocent victims.

An insurance exclusion which is contrary to case or statutory law or to the public morals, fails the public policy rule stated in *Snohomish County Physicians Corp. v. Jungaro*, 58 Wn. App. 579, 582, 794 P.2d 76 (1990). Whole families, including children, frequently travel and work together in farm labor. The practical effect of allowing a migrant workers exclusion is to deny insurance protection to whole families if a migrant worker is part of that family, and to deny protection to other potential innocent victims who may be injured by them. This contravenes the purpose of the FRA, and is contrary to the public morals. A court, in deciding what is public policy, is concerned about what is right and just when the matter affects our citizens collectively. *Selix v. Boeing Co.*, 82 Wn. App. 736, 740-41, 919 P.2d 620 (1996), *review denied*, 130 Wn.2d 1024 (1997). Leader National's exclusion in the context of the facts of this case is neither right nor just.

Furthermore, even though the term "migrant workers" may appear neutral on its face, it has, as applied, an adverse disparate impact upon Hispanics who comprise nearly all the group engaged in seasonal agricultural labor. One of the purposes of Washington's Law Against Discrimination, RCW 49.60, is to prohibit discrimination against our inhabitants in specified classifications, including race or color. The migrant workers exclusion, as applied in our state, appears to violate the civil rights protected in RCW 49.60.030(1)(a), (e) to obtain and hold

employment and engage in insurance transactions without discrimination. This record contains no underwriting risk distinctions which can justify the disparate treatment applied to Hispanic seasonal agricultural workers, and other groups who transport themselves from place to place to engage in, for example, the construction industry. For these additional reasons, the policy provision also violates the public policy reflected in our law against discrimination.

The migrant workers exclusion is set aside and coverage is provided for the claims of the innocent victims of Mr. Rivera-Chavez's negligence, as the exclusion violates the public policy of the State of Washington.

■ 2. *Ambiguity.* The second question we decide is whether the migrant workers exclusion is ambiguous. If the language of an insurance policy is ambiguous, it is to be construed most favorably to the insured. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). The rule strictly construing ambiguities in favor of the insured applies with added force to exclusionary clauses seeking to-limit policy coverage. *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996). Language is ambiguous if, on its face, it is "fairly susceptible to more than one reasonable interpretation." *Tewell, Thorpe & Findlay, Inc. v. Continental Cas. Co.*, 64 Wn. App. 571, 575, 825 P.2d 724 (1992).

■ In construing an insurance policy, we give the policy language the same "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994).

Read and applied literally, the clause would deny coverage for anyone transporting school-age children other than the children of the named insured, regardless of their destination. The clause would deny coverage whenever the covered automobile was used to transport visitors who happened to be staying in a hotel or motel. Further, the

clause would deny coverage whenever anyone provided transportation to a migrant worker, regardless of purpose or destination. We do not think any purchaser of insurance would read the exclusion literally.

A reasonable and sensible reading of the exclusion suggests a more narrow meaning. An exclusion relating to transportation of these particular classes of passengers (school children, hotel/motel guests and migrant workers) connotes transportation of such persons to and from their schools, places of commercial accommodation, and places of agricultural employment, respectively, by someone acting on behalf of, or for the benefit of, the schools, hotels or employers. So construed, the clause has no application to five men driving to a nearby town to look for work.

There is no evidence Mr. Chavez was acting for the benefit of any employer of migrant workers. The record shows his passengers were not employed at the time of the accident. The court erred in finding the "migrant workers" exclusion applied here.

3. *Equal Protection.* The Mendozas also argue that the clause, if valid, violates equal protection laws. This challenge was not raised in the trial court. More significantly, this record is not sufficiently developed to pass upon this important constitutional question. We therefore decline to address the assignment of error. *Lewis v. City of Mercer Island*, 63 Wn. App. 29, 31, 817 P.2d 408, *review denied*, 117 Wn.2d 1024 (1991).

## FELONY EXCLUSION

The second substantive issue is whether the insurer is entitled to enforcement of the felony exclusion.

1. *Public Policy.* We first address the public policy question. Because Mr. Chavez pleaded guilty to two felonies, Leader National contends that the felony exclusion in its policy precludes coverage. The exclusion provides:

> This coverage does not apply to bodily injury or property damage if your covered auto is used in the commission of any felony, including theft of your covered auto.

We consider whether this exclusion is enforceable in light of the public policy embodied in Washington's financial responsibility act (FRA), RCW 46.29.

■■ ■■ The FRA focuses on compensating accident victims for their injuries. Thus, an exclusion focused on who is driving the vehicle, and directed against risks associated with particular classes of drivers, does not violate public policy. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 209, 643 P.2d 441 (1982). An exclusion directed toward a particular class of accident victims, however, directly contravenes the public policy directed at protecting such victims. *Id.* at 208. Similarly, an exclusion based on the nature of the damage caused to the victims of automobile accidents strikes at the heart of this public policy.

On its face, the exclusion in the present case, based on felonious use of the vehicle, appears aimed at the risky behavior of the driver which would be consistent with the policy embodied in the FRA. But with respect to two felonies, vehicular assault and vehicular homicide, this is not the case.[3] The reckless driving of a vehicle, an action that would constitute a misdemeanor if it resulted only in property damage or minor injury, is elevated to a felony if it causes serious bodily injury or death. Thus, the felony exclusion, with respect to these two felonies, deprives the victims of compensation based on the nature of their injuries rather than the identity or actions of the driver. The exclusion directly violates the public policy of

---

[3]RCW 46.61.520(1) provides: "When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle . . . ."

RCW 46.61.522(1) provides: "A person is guilty of vehicular assault if he operates or drives any vehicle: (a) In a reckless manner, and this conduct is the proximate cause of serious bodily injury to another . . . ."

compensating the innocent victims of automobile accidents and cannot be enforced.

We recognize the courts have consistently enforced insurance contract provisions excluding damages caused by criminal acts and, more especially, intentional infliction of injury. *See Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 431-32, 932 P.2d 1244 (1997); *Cary v. Allstate Ins. Co.*, 130 Wn.2d 335, 344-45, 922 P.2d 1335 (1996). In general, it is against public policy to insure against liability rising from the intentional infliction of injury on the person of another. *American Home Assur. Co. v. Cohen*, 124 Wn.2d 865, 881 P.2d 1001 (1994); *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 98, 776 P.2d 123 (1989). Recently the Supreme Court, noting such exclusions violate no public policy in the context of homeowners insurance and professional liability policies, pointed out the same cannot be said in the context of automobile insurance. *Peasley*, 131 Wn.2d at 431-32; *Cary*, 130 Wn.2d at 344-45. In any event, the felonies in the present case, vehicular homicide and vehicular assault, present no such conflicting policy issue; intent is not an element of either of these crimes.

Under the facts of the case before us, the felony exclusion is against the public policy of the State of Washington. The trial court properly concluded this exclusion would not be enforced.

2. *Ambiguity*. The next question is whether the felony exclusion is ambiguous. Leader National contends the term "commission of any felony" includes all felonies and, therefore, it would make no difference what felony was committed. Leader National's argument is incorrect and fundamentally flawed, as it ignores its own policy language requiring "commission" which by its very nature connotes an element of deliberateness. It is also too inclusive and, therefore, too general and capable of different ambiguous meanings. It is in this way substantially equivalent to a general "criminal acts" exclusion. Because exclusionary clauses are strictly construed against the

insurer, this ambiguity requires strict construction. *Labberton v. General Cas. Co. of Am.*, 53 Wn.2d 180, 182, 332 P.2d 250 (1958).

A relevant analysis of a "criminal acts" exclusion is found in *Young v. Brown*, 658 So. 2d 750, 754 (La. Ct. App. 1995). An exclusion of injury resulting from "use in the commission of any felony" is reasonably understood to apply to intentional acts:

> The term "criminal acts" is equivocal and susceptible of more than one interpretation based upon its usage and the tenor of the exclusionary language. A reasonable liability insurance buyer could construe the instant exclusion to deny coverage only for intentional criminal acts, thereby allowing coverage for damages arising out of non-intentional, criminal negligence.

*Young*, 658 So. 2d at 754.

The felony exclusion is more capable of being found equivocal and susceptible of multiple interpretations by a reasonable liability buyer than was the term "criminal act" in *Young*, because the term "felony" connotes criminal acts which are intentional rather than reckless or without criminal intent. This is the likely interpretation to be given to the term by an average insurance purchaser in Washington State. A reckless act, as required here, would not likely be considered deliberate in this context. Although the record is unclear as to the trial court's reasoning, it did not err in declining to apply the felony exclusion.

3. *Alford Plea.* The Mendozas point out the evidentiary and legal significance of an *Alford* plea differs from a finding of guilt after a trial. The plea could not be used as collateral estoppel in a personal injury case. *Safeco Ins. Co. of Am. v. McGrath*, 42 Wn. App. 58, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986). An *Alford* plea is admissible as an admission. An *Alford* plea without more, is insufficient to support summary judgment,

particularly in light of the ambiguity of the felony language.[4]

## CONCLUSION

The trial court's grant of summary judgment to Leader National on the "migrant workers exclusion" is reversed and the denial of summary judgment to Leader National on the "felony exclusion" is affirmed. As we reverse the dismissal of claims and remand for trial, any award of attorney fees is premature. The attorney fees issue, including any fees for this appeal, will abide the results of the trial.

SWEENEY, C.J., and SCHULTHEIS, J., concur.

Reconsideration denied November 14, 1997.

Review granted at 135 Wn.2d 1005 (1998).

---

[4]The term "felony" refers not to facts but to a factually driven legal conclusion. If Mr. Chavez had died, certainly no charges would have been lodged against him. The *Alford* plea adds to the factual issues which need resolution. *See Gross v. Allstate Ins. Co.*, 146 Misc.2d 30, 549 N.Y.S.2d 550, 552-54 (1989), which reasons that issues such as these are for a fact finder.