[No. 21454-7-II.   Division Two.   July 17, 1998.]

THE CITY OF BREMERTON, *Appellant*, v. HARBOR INSURANCE COMPANY, ET AL., *Respondents*.

*Linda L. Foreman* of *Foster Pepper & Shefelman*, for appellant.

*Diane L. Polscer*, for respondents.

HOUGHTON, C.J. — The City of Bremerton (City) sought insurance coverage from Planet Insurance (Planet) for claims based upon emission of toxic and noxious gases, odors, and fumes from the City's sewage treatment plant. The City appeals from the trial court's summary judgment dismissing its claims for insurance coverage against Planet based upon a policy exclusion. Because the policy language unambiguously excludes coverage, we affirm.

## FACTS

### The Insurance Policy Exclusion

The City owns and operates a sewage utility for the collection, treatment, and disposal of wastewater. Planet and

Reliance National Indemnity Company (Planet) issued primary insurance policies to the City for each of three years from February 1, 1988 to February 1, 1991. Planet also issued excess liability policies for each of the same periods under the terms and conditions in the primary policies. Planet later added a "Municipal Liability Pollution Exclusion" to each of the primary Planet policies by endorsement.

This endorsement stated that it replaced the pollution exclusion set forth in the main policy, specifically providing:

> It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following:

The replacement text of the exclusion states, in pertinent part, that the policy does not apply "to any injury, damage or any other liability arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants . . ." Additionally, the exclusion defined "Pollutants" as "[a]ll irritants and contaminants including but not limited to smoke, vapors, soot, fumes, acids, alkalis, chemicals, solids, liquids or gases and thermal pollutants."

The Underlying Claims

Charleston Beach and West Hills are residential areas located in the vicinity of the treatment plant. Following an expansion and improvement of the plant, residents of these areas began suffering a variety of physical and economic harms. In August 1989, the West Hills Association and its individual members filed a complaint against the City for damages allegedly resulting from its treatment plant. The West Hills plaintiffs attributed their damages to the "emission of . . . noxious and toxic fumes" resulting from the City's "negligent design, construction, and operation of the treatment plant."

The Charleston Beach Association alleged similar dam-

age claims caused by the "defective siting, design, construction, and operation" of the treatment plant, claiming that the City's negligence "in maintaining and operating the sewage treatment plant" resulted in the "emission of foul and obnoxious odors and toxic gases."

The City claimed that the West Hills and Charleston Beach lawsuits were covered under an insurance policy issued by Planet. But, based upon its interpretation of the pollution exclusion, Planet denied coverage.

In September 1994, the City filed a lawsuit, seeking damages and a declaratory judgment stating: (1) that damages arising from the treatment plant are covered under its Planet policies; (2) that the insurer is obligated to pay for all defense costs associated with claims brought against the City; (3) that the insurer is obligated to fully indemnify the City for liability imposed by the settlement of claims; and (4) that the insurer is liable for breaching its legal obligations to the City relating to defense, indemnity, and good faith.

Both sides moved for summary judgment. Planet argued that the absolute pollution exclusion excluded coverage for all of the underlying claims against the City. The City moved to strike all of Planet's claims and defenses based upon the exclusion because: (1) the deletion of "waste" from the definition of "pollutants" manifested the parties' intent that liability arising from release, escape, discharge and dispersal of "waste" would not be excluded from coverage; and (2) the deletion of "waste" from the exclusion made the exclusionary provision ambiguous. The trial court granted Planet's motion for summary judgment, dismissing the case with prejudice. The City appeals.

## ANALYSIS

In reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The appellate court considers all facts submitted and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Id*. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Id*.

■ The interpretation of an insurance policy is a question of law for the court. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997); *City of Redmond v. Hartford Accident & Indem. Ins. Co.*, 88 Wn. App. 1, 7, 943 P.2d 665 (1997), *review denied*, 134 Wn.2d 1001 (1998). Here, the parties dispute the interpretation of the policy's "Municipal Liability Pollution Exclusion."

■ Certain basic principles apply when examining an exclusionary clause in insurance contracts. We first note that coverage exclusions are contrary to the fundamental purpose of insurance and will not be extended beyond their clear and unequivocal language. *Stuart v. American States Ins. Co.*, 85 Wn. App. 321, 325-26, 932 P.2d 697 (1997), *aff'd*, 134 Wn.2d 814 (1998). Exclusions, therefore, are strictly construed against the insurer. *Stuart*, 85 Wn. App. at 326; *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374, 917 P.2d 116 (1996). Nevertheless, this general rule is merely an aid in determining the intention of the parties. *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985). A strict application should not trump plain, clear language resulting in a strained or forced construction. *See Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 457, 760 P.2d 337 (1988); *see also Teague Motor Co. v. Federated Serv. Ins. Co.*, 73 Wn. App. 479, 484, 869 P.2d 1130 (1994) (although exclusions are strictly construed against insurer, court will not override clear intent of parties).

Furthermore, any ambiguities in the insurance policy are strictly construed against the insurer. *Peasley*, 131 Wn.2d

at 424; *see also Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 201, 743 P.2d 1244 (1987) (where insurance policy may be reasonably interpreted in multiple ways, court should apply meaning most favorable to insured); *Mendoza v. Rivera-Chavez*, 88 Wn. App. 261, 268, 945 P.2d 232 (1997). This rule applies with added force to exclusions limiting coverage. *Mendoza*, 88 Wn. App. at 268.

An exclusion is ambiguous if, on its face, its language is fairly susceptible to two different, but reasonable, interpretations. *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 721-22, 952 P.2d 157 (1998); *Peasley*, 131 Wn.2d at 424. But if the language is clear and unambiguous, we must enforce the clause as written and cannot modify the contract or create ambiguity where none exists. *American Nat'l Fire Ins. Co. v. B&L Trucking and Constr. Co.*, 134 Wn.2d 413, 428, 951 P.2d 250 (1998); *Peasley*, 131 Wn.2d at 424. When analyzing the policy and reviewing for an ambiguity, policy language is construed as if read by an average insurance purchaser. *Id.*; *see also Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 66, 882 P.2d 703 (1994) (undefined terms in insurance policy exclusion should be interpreted according to an understanding of average insurance purchaser).

Here, the policy excluded coverage for "any injury, damage or any other liability arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," defined as "all irritants or contaminants including . . . vapors, fumes, . . . or gases." West Hills alleged damages resulting from the emission of "noxious and toxic fumes" and "gaseous effluent," and the Charleston Beach damages allegedly resulted from the release of "foul and obnoxious odors and toxic gases."[1]

We agree with Planet that liability for the alleged dam-

---

[1]An insurer's obligation to defend an insured is determined by the allegations on the face of the pleadings of the underlying lawsuit. *Farmers Ins. Co. v. Romas*, 88 Wn. App. 801, 807, 947 P.2d 754 (1997). And when assessing the defense obligation, the court liberally interprets the allegation to recognize the insurer's duty to defend. *Aetna Cas. & Sur. Co. v. M&S Indus., Inc.*, 64 Wn. App. 916, 928, 827 P.2d 321 (1992).

ages was subject to exclusion because the claims involved "pollutants." The policy defines a "pollutant" as any "irritant or contaminant" and specifically lists "fumes" and "gases" as examples. The language unambiguously excludes claims arising from "fumes" and "gases" from coverage. Furthermore, the specified examples of "irritants or contaminants" in the exclusion language are listed as nonexclusive types of "pollutants" subject to exclusion from coverage. The list is illustrative and not exhaustive and odors are effectively excluded as well. A reasonable person reviewing this language would expect that "noxious and toxic fumes" and "foul and toxic odors and gases" are "pollutants" within the meaning of the pollution exclusion.

We further note that this reading of the exclusionary language is consistent with *Cook v. Evanson*, 83 Wn. App. 149, 920 P.2d 1223 (1996), *review denied*, 131 Wn.2d 1016, 936 P.2d 416 (1997). There, the insured negligently applied a cement sealant to an outdoor area without sealing off a nearby fresh air intake system. Fumes from the sealant entered the intake system and circulated throughout the building's ventilation system. Several individuals suffering harm caused by the "toxic vapors" received money judgments because of the insured's negligence.

The insurer in *Cook* declined coverage based upon the exclusion's express language. In response, the plaintiffs maintained that the exclusion should not be construed to include routine workplace torts and that the policy was ambiguous as applied to traditional tort situations. *Cook*, 83 Wn. App. at 154. Rejecting this argument, the court applied the "policy's plain language" that specifically listed "vapor" as a type of "pollutant" subject to exclusion, finding no ambiguity in the exclusion. *Id*. at 156.

Here, the City distinguishes *Cook*, assigning considerable significance to the deletion of "waste" from the exclusion. The City contends that the deletion expressed the parties' intent "to expand coverage" under the policy. But the dele-

tion of "waste" from the exclusionary provision is irrelevant to a proper construction of the exclusion. Although the City correctly notes that the exclusion in *Cook* listed "waste" as an example of a "pollutant," the court did not rest its decision on the interpretation of the term "waste", but instead rested it upon the plain meaning of pollutant as defined in the text of the exclusion. Therefore, the distinction between the two exclusions is of no consequence. Moreover, this argument ignores the remaining language in the exclusion that expressly excludes from coverage the types of substances asserted in the underlying complaints.

Accordingly, we agree with Planet's contention that "waste" is not relevant in determining whether noxious and toxic vapors, fumes, and gases are "pollutants" within the meaning of the exclusion. We further note that cases involving damages resulting from the release of similar substances based their decisions upon interpretation of the plain language of nearly identical exclusion language.[2] And none of the cases rested their decisions on interpretation of "waste" within the meaning of the exclusion, as the City would have us do here. The substance in the underlying complaints falls squarely within the scope of the plain, unambiguous exclusionary language in the policy.

Affirmed.

---

[2]*See American States Ins. Co. v. Nethery*, 79 F.3d 473, 475-76 (5th Cir. 1996) (fumes emanating from paint and glue materials used to paint interior of residence were "pollutant" within meaning of exclusionary language); *Brown v. American Motorists Ins. Co.*, 930 F. Supp. 207, 208 (E.D. Pa. 1996), *aff'd*, 111 F.3d 125 (3d Cir. 1997) and *cert. denied*, 522 U.S. 950 (1997) (fumes from waterproofing sealant on exterior of house were "pollutants" within meaning of pollution exclusion); *American States Ins. Co. v. F.H.S., Inc.*, 843 F. Supp. 187, 189 (S.D. Miss. 1994) (gaseous substance released from warehouse was "pollutant" subject to exclusion from liability); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (accidental release of cloud of hydrofluoric acid from oil refinery was "pollutant" subject to exclusion); *O'Brien Energy Sys., Inc. v. American Employers' Ins. Co.*, 427 Pa. Super. 456, 629 A.2d 957, 964 (1993) (methane gas gradually migrating from landfill was "pollutant" and therefore excluded from coverage), *appeal denied*, 642 A.2d 487 (1994).

MORGAN and HUNT, JJ., concur.