Korsmo, J.
(dissenting) —
¶117 Like the trial court, I see nothing ambiguous about the infectious disease policy and the fact that Shannon Kries has an expert who prefers a different policy does not render the Women’s Clinic’s (Clinic) policy ambiguous. But, even under her own interpretation of the policy, she had a draining wound for the last several months of her employment and had not been cleared to return to work. I therefore dissent from those aspects of the majority opinion and need not address the other contentions.
¶118 The basic principles that govern this inquiry are well settled. Whether a contract is ambiguous is a question *145 of law for the court to determine. McGary v. Westlake Inv’rs, 99 Wn.2d 280, 285, 661 P.2d 971 (1983). Courts will not read an ambiguity into a contract “where it can reasonably be avoided by reading the contract as a whole.” Id. An ambiguity exists if language is “ ‘fairly susceptible to more than one reasonable interpretation.’ ” Mendoza v. Rivera-Chavez, 88 Wn. App. 261, 268, 945 P.2d 232 (1997) (quoting Tewell, Thorpe & Findlay, Inc. v. Cont’l Cas. Co., 64 Wn. App. 571, 575, 825 P.2d 724 (1992)).
¶119 The “Infection Control Policy” lists six “general guidelines.” Clerk’s Papers (CP) at 436. The first of those is that “No one is allowed to work with an open or draining wound.” The second[1] guideline provides: “Hospital employees reporting to work, involving patient care or food service, with sutured lacerations on hands or forearms will not be allowed to work until the sutures are removed or until affected areas can be washed thoroughly. All sutures, other than on hands and forearms, must be covered during working hours.” Id.
¶120 Similarly, the return to work policy expressly states that “No sutures or open wounds on hands or forearms” will be allowed in direct patient care. CP at 445. However, employees may, by approval, work in patient care areas with “Sutures or wounds that can be completely covered, other than hands/forearms (i.e. chest, leg, face).” Id.
¶121 The general guidelines and the return to work policy do not conflict in the least. The first general guideline speaks to an “open or draining wound.” The second general guideline covering sutures and the return to work policy are the same—no wounds or sutures on the hands or forearms, but sutures on the rest of the body are permitted if they can be covered. The policies of the first two guidelines complement each other and do not conflict. The first *146 policy addresses draining wounds, while the second addresses nondraining closed wounds. Stated simply, the Clinic’s rules were no open wounds, no draining wounds, no sutured wounds below the elbow, and sutured wounds other places might be all right if they could be covered.
¶122 While the phrase “open or draining wound” could be clearer, it is not ambiguous, despite Ms. Kries’ efforts to redefine the phrase to create an ambiguity. Both her expert, Dr. Francis Riedo, and defense expert Dr. Michael Gillum agreed that all open wounds were, technically speaking, draining wounds.[2] CP at 360, 371, 374. Dr. Riedo also agreed with the Clinic’s policy—an employee should not work with an open or draining wound. CP at 360. Indeed, he had the same policy. CP at 361. He also agreed that no employee with forearm wounds should work. CP at 363. His disagreement with the Clinic’s “open wound” policy was that it did not address draining wounds that could be adequately covered.[3] CP at 360. Thus, he thought the Clinic’s policy should be reinterpreted to permit people whose wounds could be adequately covered, or whose draining could be contained, to work. CP at 360.
¶123 This is a mere policy disagreement between experts; it is not an ambiguous policy. Dr. Riedo believed the policy was overinclusive, but he had the same understanding of what an open or draining wound was as the Clinic did. He thought that an exception for adequately covered wounds (or controlled drainage) would sufficiently serve the purposes of the policy. However, that was not his decision to make. The fact that the “open wound” policy did *147 not address covered wounds did not mean that the policy was ambiguous.[4]
¶124 The majority’s effort to find ambiguity in the phrase “open or draining wound” likewise fails. It reasons that because “an open wound is always draining,” that “Therefore, the term ‘draining wound’ in the Women’s Clinic infection policy must be narrowed, otherwise it adds no meaning to the policy.” Majority at 118. That reasoning is unsound for at least two reasons. First, while all “open wounds” may be draining, it does not necessarily follow that all draining wounds are “open wounds.”[5] Ms. Kries’ own example demonstrates the problem. While her skin wound was “closed,” she continued to have draining due to internal infections. Her own expert agreed that she had two drains in place. CP at 360. By her argument, she may no longer have had an “open wound,” but admittedly she still had a “draining wound.” The two terms are not coextensive.
¶125 The second reason the majority’s argument fails is that even if the two terms were coextensive, there is no basis for “narrowing” the meaning of only one of two terms that have the same meaning. The outcome of that exercise would be, as here, to continue to have the same problem the majority was trying to fix. Instead, the purpose of interpreting language in a contract is to “determine the parties’ intent at the time of contracting” in order “to give effect to the apparent clear intention.” Eurick v. Pemco Ins. Co., 108 Wn.2d 338, 340-41, 738 P.2d 251 (1987). Contracts are interpreted to give effect to all provisions. Smith v. Cont’l Cas. Co., 128 Wn.2d 73, 80, 904 P.2d 749 (1995). Interpreting “draining wound” to have the same meaning as “open wound” would render, quite unnecessarily, one of those two phrases meaningless in contravention of our obligation to give meaning to both.
*148 ¶126 Instead, if we meet our obligations to avoid ambiguity and give effect to both phrases, as well as consider the other provisions of the contract, the answer is clear. The disputed provision prohibits an “open wound” and it also prohibits a “draining wound.” Giving “draining wound” its own meaning means that we cannot interpret that phrase to only apply to an “open wound.” Instead, it must mean a draining closed wound, such as the closed wound that afflicted Ms. Kries. Closed wounds that are not draining would be covered by the suture policy.
¶127 Here, Ms. Kries had, by her own admission, a closed wound that was draining. Her condition fell squarely within the “open or draining wound” policy because the existing suture policy left draining wounds to the “open or draining wound” policy. Because there is no ambiguity and because Ms. Kries fits within the policy, the trial court properly granted summary judgment.
¶128 Medical care facilities by definition address many patients who are themselves ill and also at increased risk of developing infections from others. Putting them together with other ill patients or health care employees who themselves are ill significantly increases the risk of new infections to patients and employees alike. The Clinic adopted a policy of limiting the risk of infection for both patients and employees. Dr. Riedo presented evidence of a different approach that he considers more balanced. That there might be a different reasonable policy does not mean that the Clinic’s approach is unreasonable or discriminatory. The Clinic worked with Ms. Kries after she disclosed her condition, and employed her for nearly 11 months even though she was off work much of that period due to the fact that her condition would not heal.[6] The Clinic’s treatment of her, consistent with its employee infection policy, was entirely reasonable.
*149 ¶129 The most that Ms. Kries has shown is that in some circumstances, the phrase “open or draining wound” is redundant. However, redundancy is not ambiguity. There are reasonable alternative policies, but not alternative reasonable readings of this policy. I, accordingly, would affirm the order granting summary judgment, and respectfully dissent.

 The other general guidelines address employees with elevated temperatures, those with contagious upper respiratory infections, those who become ill at work, and those with infectious diseases. CP at 436.

 Curiously, the majority opinion at page 119 faults the defense expert for equating open wounds with draining wounds, but does not fault the plaintiff’s expert for having the same view.

 “What’s unspoken is what if you can cover the wound? It doesn’t say no one is allowed to work with a covered wound.’’ CP at 360.

 In fact, the suture policy dealt with covered wounds that were not draining wounds.

 Just because all dogs are mammals does not mean that all mammals are dogs.

 It is very possible to view Ms. Kries’ continuing infection difficulties as proof of the wisdom of the Clinic’s policy, although perhaps not of its efficacy.