[No. 47205–0. En Banc. July 30, 1981.]

McDONALD INDUSTRIES, INC., ET AL, *Respondents,* v.
ROLLINS LEASING CORPORATION, ET AL,
*Petitioners.*

Robert O. Wells, Jr. (of *Moriarty, Mikkelborg, Broz, Wells & Fryer*), for petitioners.

*R. Scott Fallon* and *Richard J. Dunlap,* for respondents.

STAFFORD, J.—This is an action to determine the extent of insurance coverage. The Court of Appeals held that coverage provided by petitioner Rollins Leasing Corporation insured respondents McDonald Industries, Inc., up to the policy limits. We affirm.

Respondent McDonald rented a tractor (the portion of a tractor–trailer combination which includes the engine and driver's compartment) from Rollins. The rental agreement stated that Rollins would provide insurance coverage for liability "arising from the ownership, maintenance or use" of the rented vehicle. The rental agreement further stated on the reverse side, in conspicuous type, "said policy [of insurance] does not cover . . . liability arising from loading or unloading of said vehicle".

Employees of McDonald attached the rented tractor to a trailer owned by McDonald and loaded an 11–ton steel crane counterweight onto the trailer. The weight was secured by only one chain, which the trial court found to be violative of a federal regulation[1] and thus negligence per se. While a McDonald employee was driving the tractor–trailer combination through an "S" curve, at 40 m.p.h., the coun-

---

[1] The mere fact that this was illegal does not take it outside the coverage of the policy, however. *See Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 29, 593 P.2d 156 (1979).

terweight slid under the retaining chain and fell off the trailer. Two vehicles collided with the counterweight, resulting in three separate bodily–injury claims. Although substantial damages were incurred, they are covered by insurance regardless of the outcome of this decision.

McDonald and Safeco Insurance Co., which had issued a policy to McDonald covering such liability, brought a declaratory judgment action requesting that Rollins' insurance coverage under the rental agreement be deemed primarily liable and that the Safeco policy be held to provide only secondary coverage.

The trial court dismissed the complaint with prejudice, holding the accident did not not arise from "ownership, maintenance or use" of the rented vehicle, but instead was "caused by negligent loading of the trailer in question". The trial court held the accident was excluded from coverage by the "loading and unloading" clause of the insurance policy.

The Court of Appeals reversed. It found the exclusionary clause to be ambiguous, and thus strictly construed it against Rollins. Since the accident did not occur during the "loading and unloading" process, the exclusionary clause was held not to apply. We granted review to determine whether an insurance policy which covers liability arising from the ownership, maintenance or use of a vehicle but which excludes coverage for liability arising from loading or unloading of the vehicle, covers liability arising from an accident caused by improper loading.

Before this issue can be resolved two other matters must be discussed. First, the rental agreement makes it clear that the parties intended that liability insurance coverage was to be provided by Rollins. It had a liability policy on the rented vehicle under which the renter became an insured unless he opted out of the coverage. This was explained on the rental agreement form, and McDonald did not opt out of the coverage. The rental agreement also stated the limits of the liability insurance policy, including the fact that it excluded "liability arising from loading or unloading of said

vehicle". It repeatedly referred to this as liability insurance, and contained a "hold harmless" clause whereby the renter was obligated to indemnify Rollins from any loss in excess of the liability insurance provided. Furthermore, Rollins does not contend this was not a liability insurance policy. Further, there is an undisputed finding of fact that Rollins provided liability insurance.[2]

Second, it is apparent that, in the case at hand, the covered vehicle was in "use" when the accident occurred. Indeed it was being used for the sole purpose for which it had been rented. *See Mays v. Aetna Cas. & Sur. Co.,* 242 So. 2d 264 (La. App. 1970). The "use" was, in fact, a causative factor in the accident. Without the motive power of the insured tractor the trailer would not have been able to negotiate the "S" curve on the highway at 40 m.p.h. The tractor was more than a mere coincidental place in which the injury occurred. Without question its use "contributed in some way to produce the injury". *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 593 P.2d 156 (1979); *Handley v. Oakley,* 10 Wn.2d 396, 116 P.2d 833 (1941). Thus, the accident was covered by the insurance unless excluded by the "loading and unloading" exemption.

In determining the meaning of the "loading and unloading" clause the normal rules of construing insurance policies must be employed. Much depends upon whether there is an ambiguity in the language of the contract. Coverage is considered ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable". *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976) and cases cited

---

[2] Even if this were not an insurance contract our disposition would not necessarily be different. The rules regarding the construction of insurance contracts are basically the same as those governing other contracts. For example, the rule that ambiguous language must be construed in favor of the insured is merely the practical application of the general rule regarding contracts that a written agreement should, in case of doubt as to the meaning thereof, be interpreted against the party who has drawn it. *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 918–19, 468 P.2d 666 (1970).

therein. If ambiguous it should be interpreted

> in accordance with the way it would be understood by the ordinary man buying insurance, "even though a different meaning may have been intended by the insurer." It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage.

(Citations omitted.) *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *accord, Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 167–68, 588 P.2d 208 (1978), and cases cited therein. Ambiguities need not be interpreted the same when they are used to *extend* coverage rather than to *except* coverage, due to the rule of strict construction against the insurer. *See* 7 Am. Jur. 2d *Automobile Insurance* § 205 (1980); 12 G. Couch, *Cyclopedia of Insurance Law* § 45:125 (2d ed. 1964); *cf. Aetna Ins. Co. v. Kent,* 85 Wn.2d 942, 540 P.2d 1383 (1975). In any event insurance contracts should be given a fair, reasonable and sensible construction which fulfills the apparent object of the contract rather than a construction which leads to an absurd conclusion or renders a policy nonsensical or ineffective. *Morgan v. Prudential Ins. Co. of America, supra.* Ambiguity should be resolved so that a doubtful provision in a contract will not unfairly devour the whole policy or relieve the insurer from liability fairly within the spirit of the policy. *Riordan v. Commercial Travelers Mut. Ins. Co.,* 11 Wn. App. 707, 525 P.2d 804 (1974).

In this case there is an obvious ambiguity regarding the meaning of the clause "arising from the loading and unloading of said vehicle". One cannot determine whether the clause was intended to apply only during the actual process of loading or unloading, whether it was to apply to the result of negligent loading operations that occurred well after accomplishment of the actual loading, or whether it was to apply to any incident in which the load was a causal factor. All interpretations are within the realm of

reasonableness.

Furthermore, a reading of standard treatises would have put the drafter of a contract, such as this, on notice that the clause "arising from the loading and unloading" is ambiguous. Normally the clause is used to *extend* coverage for "use". Indeed we are aware of no reported cases which treat this clause as a limitation of coverage in an instance such as this. Nevertheless, there is a split of authority as to whether "loading and unloading" extends coverage to include that time when the goods are "at rest" or until there is a "completed operation".[3] *See Transamerica Ins. Group v. United Pac. Ins. Co., supra* at 24–25; *see generally* 6B J. Appleman, *Insurance Law and Practice* § 4322 (1979); 1 R. Long, *The Law of Liability Insurance* §§ 6.01 *et seq.* (1980); 12 Couch §§ 45:123 *et seq.* Both theories agree, however, that "loading and unloading" is used to cover liability while the vehicle is stationary, Long, at §§ 6.02, 6.03, and is used to cover liability arising during the "process" or "operation" of loading or unloading, Appleman, at § 4322; *Transamerica,* at 26. Rollins attempts to change the general meaning of the clause by extending it to liability which is *caused* by the loading of the vehicle even if it occurs after the loading process has been completed and while the vehicle is in motion, and would do this without in any way clarifying its purported intent in the questioned document.

 Since the language of the agreement is ambiguous, the court must give effect to the reasonable interpretation most favorable to the insured. *See Witherspoon v. St. Paul Fire & Marine Ins. Co., supra; Shotwell v. Transamerica Title Ins. Co., supra.* This is only logical since it was the insurer who used the ambiguous language. If it was intended that a more expansive exception be imposed, the

---

[3]It has been held that the existence of two rival theories of interpretation of the loading and unloading clause establishes the fact that the clause is ambiguous. *August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co.,* 339 Mass. 239, 158 N.E.2d 351 (1959).

insurer could have clarified its intent. 43 Am. Jur. 2d *Insurance* § 279 (1969); 1 G. Couch, *Cyclopedia of Insurance Law* § 15:77 (2d ed. 1959); *see also Starr v. Aetna Life Ins. Co.,* 41 Wash. 199, 203–04, 83 P. 113 (1905) quoted in *Riordan v. Commercial Travelers Mut. Ins. Co., supra* at 711. The purpose of insurance is to give protection and it can be presumed that such was the intent of the parties. Exemptions are contrary to this basic intent, and thus should not be extended beyond their clear and unequivocable meaning. *See generally* 1 Couch, at § 15:80.

■ Rollins' expansive reading of the exclusion clause violates another rule of insurance contract construction. As mentioned previously, an ambiguous provision should be read so that it does not unfairly devour the whole policy or relieve the insurer of liability fairly within the spirit of the policy. Rollins' reading would greatly decrease the coverage afforded during a vehicle's "use" if, whenever the load was a causal factor in the accident, the clause would exempt it from coverage. On the other hand, interpreting the clause to exclude coverage while the vehicle was in the process of loading or unloading would still give effect to the exclusionary language but would not unfairly and without clear notice decrease the protection provided during "use".

Even if this is a case of first impression, we are not without guidance. The problem was anticipated in 12 Couch, at § 45:125 wherein it was stated:

> It is necessary to bear in mind the distinction in the effect of the loading and unloading clause where it *relates to coverage* and where it is an *exception to coverage*. Where it relates to coverage, the presence of any ambiguity in the phrase requires that it be interpreted as broadly as is reasonably proper in order to provide the greatest coverage possible. Where it appears in the policy as an exception, the existence of ambiguity requires that it be interpreted as narrowly as possible, for the same purpose of providing the maximum coverage through making the least exception to the coverage of the policy.

(Footnotes omitted. Italics ours.)

Rollins' only authority for an expansive reading of the

exclusionary clause is some language in *Aetna Ins. Co. v. Kent, supra* at 944. That case was concerned with two policies of insurance written by the same company. The *automobile liability policy* covered liability "arising out of the ownership, maintenance or use, including loading and unloading, of any automobile"; the *contractor's policy* expressly did not cover liability "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile". (Italics omitted.) An accident occurred when a rock fell out of the contractor's truck due to improper loading. The Court of Appeals liberally construed the former policy and strictly construed the latter so that both covered the liability imposed. This court reversed, holding the two policies, issued to the same party by the same company, should be read together to ascertain the intent of the parties, and that the rule of strict construction should not be used to override the otherwise apparent clear intention of the parties. This court found that the parties did not intend to provide overlapping coverage, so only the automobile liability policy covered the incident. We did not hold, as argued by Rollins, that the clause must be construed the same way whether used to *exclude* or *extend* coverage. There is no inconsistency between our holding in *Aetna* and our disposition of this case.

Given our disposition of the case, we need not address other issues raised by the parties.

The Court of Appeals is affirmed.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.