[No. 3894-7-III. Division Three. August 4, 1981.]

TRANSAMERICA INSURANCE COMPANY, *Respondent,* v. DAVID L. PRESTON, ET AL, *Appellants,* CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD, *Respondent.*

*William Wimberley* and *Richter, Wimberley & Ericson,* for appellants.

*Patrick Shine, Robert J. Crotty,* and *Lukins & Annis,* for respondent Transamerica Insurance Co.

*James E. Nelson,* for respondent Chicago, Milwaukee, St. Paul and Pacific Railroad.

GREEN, J.—David L. and Ruth M. Preston appeal the granting of a summary judgment in favor of Transamerica Insurance Company. The issue presented is whether Transamerica, who issued a farm owner's/ranch owner's liability policy to the Prestons, must defend a third party complaint brought against them by the Chicago, Milwaukee, St. Paul and Pacific Railroad.[1]

The facts were stipulated by the parties on cross motions for summary judgment. Mr. Preston was a locomotive engineer for the Milwaukee Railroad. On February 19, 1977, the freight train he was operating collided with another train near Pandora, Washington. The injured parties brought suit against the Milwaukee Railroad who, in turn, filed a third party complaint against the Prestons for indemnity alleging the collision

> was solely caused by the negligent, reckless, deliberate and wanton and willful misconduct of David L. Preston . . . in violating, ignoring and purposely acting contrary to instructions, rules and orders of [his] employer, the Milwaukee Road. That all acts of [Mr. Preston] . . . were beyond the scope of [his] employment by Milwaukee Road, and contrary to and in breach of [his] respective employment contract with Milwaukee Road.

The third party complaint further alleges the Prestons are

---

[1]It should be noted that the Prestons were dismissed from the case and this dismissal was affirmed in *Stack v. Chicago, M., St. P. & Pac. R.R.,* 94 Wn.2d 155, 615 P.2d 457 (1980). In light of that decision, the Prestons are, in essence, contending Transamerica should bear the costs incurred by them in the defense of the action based upon the terms of the policy.

liable for damages to railroad property.

The Prestons tendered the defense to Transamerica, their insurer. Transamerica rejected the tender, claiming the occurrence was not covered by the policy because of certain exclusions, and commenced this declaratory judgment action. It then moved for summary judgment claiming it had no duty to defend the action. This motion was granted and the Prestons appeal.

The Prestons contend the court erred in granting summary judgment because it failed to find a duty to defend exists based solely on the allegations in the complaint. They point out the policy requires Transamerica to defend any suit against the insured "even if . . . the allegations of the suit are groundless, false or fraudulent, . . ." We find no error.

It is true an insurer's duty to defend, unlike its duty to pay, arises when the complaint is filed and is to be determined from the allegations in that complaint. *Holland America Ins. Co. v. National Indem. Co.*, 75 Wn.2d 909, 911, 454 P.2d 383 (1969); *Hering v. St. Paul–Mercury Indem. Co.*, 50 Wn.2d 321, 324, 311 P.2d 673 (1957); *National Steel Constr. Co. v. National Union Fire Ins. Co.*, 14 Wn. App. 573, 575, 543 P.2d 642 (1975); *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 14 Wn. App. 557, 544 P.2d 763 (1975). However, in determining whether the insurer has a duty to defend, the test to be applied is whether the facts alleged in the complaint, if proved, would render the insurer liable under the policy. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 741, 504 P.2d 1139 (1973); *National Steel Constr. Co., supra* at 574. Thus, the insurer has a duty to defend only if, from the facts alleged in the complaint, it would have a duty to pay. Consequently, we must look to other provisions of the policy to determine if there is coverage for the alleged facts.

The policy covers bodily injury or property damage caused by an accident "*to which this insurance applies*" and Transamerica will defend a suit "seeking damages *on*

*account of such* bodily injury or property damage." (Italics ours.) The policy excludes coverage for

> bodily injury or property damage arising out of *business pursuits* of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits or farming.

If the facts alleged by the Prestons fall within this business pursuits exclusion, Transamerica has no duty to defend and summary judgment was properly granted.

The Prestons contend the "business pursuits" exclusion does not apply because the complaint alleges negligence beyond the scope of employment. They argue the term "business pursuits" is ambiguous and should be construed against Transamerica to allow coverage. We disagree.

■ In construing the policy, basic rules of contract construction are to be applied:

> (1) The intention of the parties must control, (2) the intent must be ascertained from reading the contract as a whole, and (3) where the language used is unambiguous, an ambiguity will not be read into the contract.

*Hering v. St. Paul–Mercury Indem. Co., supra* at 323. Also,

> [T]he court will give the language its popular and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended or is necessary to avoid an absurd or unreasonable result.

*Lawrence v. Northwest Cas. Co.,* 50 Wn.2d 282, 285, 311 P.2d 670 (1957). The exclusion here is unambiguous—it applies to business activities of the insured except those activities which would *ordinarily* be incident to a nonbusiness pursuit.

■ Generally, where the insured is engaged in an occupation when the accident occurs and the activity which causes the accident relates to performance of the insured's duties, the occurrence falls within the "business pursuits" exclusion. *Pitre v. Pennsylvania Millers Mut. Ins. Co.,* 236 So. 2d 920 (La. App. 1970); *Wint v. Fidelity & Cas. Co.,* 9 Cal. 3d 257, 507 P.2d 1383, 107 Cal. Rptr. 175 (1973);

*Berkshire Mut. Ins. Co. v. LaChance,* 115 N.H. 487, 343 A.2d 642 (1975); *Martinelli v. Security Ins. Co.,* 490 S.W.2d 427 (Mo. App. 1972); 48 A.L.R.3d 1096 (1973). This principle applies even though the act may have been intentional. *Reliance Ins. Co. v. Fisher,* 164 Mont. 278, 521 P.2d 193 (1974); *Bruns v. Foremost Ins. Co.,* 27 Ill. App. 3d 50, 325 N.E.2d 815 (1975); *Kermans v. Pendleton,* 62 Mich. App. 576, 233 N.W.2d 658 (1975).[2] In *Milwaukee Mut. Ins. Co. v. Minneapolis,* 307 Minn. 301, 239 N.W.2d 472 (1976), the court in explaining the exclusion cited with approval Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Policies. What The Courts Have Done With It,* 1970 Ins. L.J. 519, 534:

> In order for an act to be considered part of a business pursuit it must be an act that contributes to, or furthers the interests of, the business and one that is peculiar to it. It must be an act that the insured would not normally perform but for the business, and must be solely referable to the conduct of the business.

Here, the third party complaint alleges that Preston was the locomotive engineer and the accident occurred while he was operating the locomotive. Those acts are solely referable to the pursuit of his occupation. But for his business pursuit, the accident would not have occurred.

█ The Prestons suggest the allegation he was not within the scope of his employment falls within the exception to the "business pursuits" exclusion, *i.e.,* an activity ordinarily incident to a nonbusiness pursuit. We disagree. Courts apply this exception where the insured is not engaged in his employment, is not operating an instrumentality ordinarily related to the business, or is not motivated by a business purpose. *Williams v. Herrera,* 83 N.M. 680, 496 P.2d 740 (1972); *Edwards v. Trahan,* 168 So. 2d 365 (La. App. 1964); *Jackson v. Lajaunie,* 270 So. 2d 859 (La.

---

[2]*Cf. U.S.F. & G. Ins. Co. v. Brannan,* 22 Wn. App. 341, 589 P.2d 817 (1979) (a majority of this court upheld a jury's affirmative answer to an interrogatory as to whether the insured's shooting of two business associates at a jobsite arose out of a business pursuit).

1972); *Home Ins. Co. v. Aurigemma,* 45 Misc. 2d 875, 257 N.Y.S.2d 980 (1965); *Milwaukee Mut. Ins. Co. v. Minneapolis, supra; Farmers Ins. Exch. v. Sipple,* 255 N.W.2d 373 (Minn. 1977); *Commercial Union Ins. Co. of America v. Henshall,* 262 Ark. 117, 553 S.W.2d 274 (1977). In *Martinelli v. Security Ins. Co., supra* at 432, the court stated that to fall within the exception, the activity "must be one which is not associated with or related in any way to the insured's business pursuits." Here, Mr. Preston was engaged in his employment when the accident occurred. The instrumentality he was operating—a locomotive—was directly related to his business and would *ordinarily* be related to a business pursuit.

■ Even if the allegations in the complaint that Mr. Preston was not acting within the scope of his employment could be interpreted as inferring he was motivated by a purpose other than a business pursuit, the policy specifically excludes

bodily injury or property damage which is either expected or intended from the standpoint of the Insured;
. . .

No facts have been alleged which could conceivably be within the policy's coverage. Nor has Mr. Preston suggested any facts under which coverage could exist. In these circumstances, Transamerica is not required to investigate further to determine whether any facts do exist which would require it to defend this action. *See R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wn. App. 290, 296, 612 P.2d 456 (1980).

Additionally, the policy excludes

damage to property occupied or used by the Insured or . . . in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control.

It is undisputed Mr. Preston was exercising control over the locomotive when the accident occurred.

Giving a fair reading to the policy exclusions, no facts have been alleged which, if proved true, would provide cov-

erage under the policy. To conclude otherwise would require a strained interpretation of the policy not intended by its terms.

Affirmed.

McINTURFF, C.J., and ROE, J., concur.