[No. 26443–5–I.   Division One.   May 20, 1991.]

SUSAN STOUGHTON, *Plaintiff*, v. MUTUAL OF ENUMCLAW, *Appellant,* STATE FARM FIRE AND CASUALTY COMPANY, ET AL, *Respondents.*

*Hal Thurston,* for appellant.

*Charles Siljeg,* for respondent State Farm.

*H. Clarke Harvey* and *Kelly & Harvey,* for respondents Kays.

WEBSTER, A.C.J.—Mutual of Enumclaw insured Richard Kays under a homeowners policy containing a "business pursuits" exclusion. The trial court granted summary judgment against Mutual of Enumclaw, concluding that Kays's part-time employment under the facts of this case did not comprise a "business pursuit". We reverse.

## FACTS

Kays retired in 1983 at the age of 50 from Seattle City Light, where he had been employed as a power dispatcher. During the first 3 years of his retirement, Kays worked to maintain his home and property. Beginning in 1986, Kays performed odd jobs for various people including remodeling, cutting firewood, mending fences, and clearing brush. One of the reasons he worked was to "supplement his

retirement benefits". He used the income for household goods, groceries, entertainment, and general "spending money". Kays stated that if he did not feel like working, he did not work because he did not need the income.

In May of 1987, while he was still working for the M–Bar–C Ranch, Kays began working for Rodgers on an occasional basis, averaging 5 to 6 hours per week. After his employment with the M–Bar–C Ranch terminated, Kays's hours at Rodgers's farm eventually increased to "probably 12 to 20 hours a week". Kays reported to Rodgers's farm every weekday morning, a schedule which remained "fairly constant". He performed various tasks for Rodgers to maintain the premises. Some days Rodgers did not have any work for Kays and would send him home. On the days Kays did work, he worked about 4 hours per day. On occasion, Kays worked on the weekend. He was paid $7 per hour. Kays continued to work for Rodgers until January of 1988, when Rodgers terminated his employment. Thereafter, he performed occasional odd jobs for various people, advertising for work by word of mouth and, in one instance, advertising himself as a "general handyman" on a bulletin board.

The accident in question occurred in August of 1987 while Kays and the plaintiff, Susan Stoughton, were helping repair Rodgers's barn. Kays was removing boards from the inside of a barn wall, and Stoughton was standing outside of the barn on the other side of the wall. Kays struck the wall with a sledgehammer, and a splinter of wood flew off, striking Stoughton in the eye. Stoughton filed suit against Kays, Rodgers, and their respective insurers. Rodgers was insured by State Farm Fire and Casualty Company (State Farm). Stoughton sought a declaratory judgment and State Farm filed a cross claim for summary judgment to establish that Mutual of Enumclaw's policy covered Kays. Mutual of Enumclaw filed a counterclaim, arguing that it had no duty to defend Kays under its policy because Kays was engaged in a "business pursuit".

The court reasoned that any ambiguities in an insurance contract must be construed against the insurer and found that, as a "handyman", Kays was "not engaged in any particular trade or occupation." It further found that Kays's employment did "not rise to the level of continuous and comprehensive activity for financial gain", and that he was not "engaged in the activity of handyman as a means of livelihood." Finding no disputed issues of material fact, the trial court granted summary judgment against Mutual of Enumclaw, holding that it had a duty to defend Kays and reimburse his attorney fees.

## DISCUSSION

█ The sole issue in this case is whether the activity Kays was engaged in at the time of the accident comprised a "business pursuit". Language in insurance policies is construed according to its "popular and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended". *Lawrence v. Northwest Cas. Co.,* 50 Wn.2d 282, 285, 311 P.2d 670 (1957); *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 358, 517 P.2d 966 (1974). Ambiguous terms must be construed in favor of the insured. *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 26 Wn. App. 376, 380, 613 P.2d 800 (1980). Washington courts have analyzed business pursuits exclusions in only three cases. *Rocky Mt. Cas. Co. v. St. Martin,* 60 Wn. App. 5, 802 P.2d 144 (1990); *Transamerica Ins. Co. v. Preston,* 30 Wn. App. 101, 632 P.2d 900 (1981); *U.S.F.&G. Ins. Co. v. Brannan,* 22 Wn. App. 341, 589 P.2d 817 (1979). Only *Rocky Mountain* is on point, however, as the other decisions focused predominantly on whether the activity in question was "ordinarily incident to nonbusiness pursuits" and, therefore, excepted from the exclusion.

█ Mutual of Enumclaw's homeowners insurance policy with Richard Kays excludes coverage for "bodily injury or property damage arising out of business pursuits of any Insured", and defines "business" as "a trade, profession, or occupation, including farming". The business pursuits

exclusion at issue in *Rocky Mountain* was identical in relevant part to the exclusion in Mutual of Enumclaw's policy. *Rocky Mountain,* at 7 n.1. In that case, the court indicated that an activity comprised a business pursuit "if conducted on a regular and continuous basis for compensation". *Rocky Mountain,* at 7. Other courts have applied a similar test, inquiring whether the insured's activity contained the elements of "continuity" and "profit motive". *Rocky Mountain; e.g., Home Ins. Co. v. Aurigemma,* 45 Misc. 2d 875, 257 N.Y.S.2d 980, 985 (1965). *See* Annot., *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy,* 48 A.L.R.3d 1096 § 3 (1978 & Supp. 1990). We follow the first part of the test stated in *Rocky Mountain*—whether the insured conducted the activity on a regular and continuous basis. However, as to the second part of the test, we believe that the proper inquiry is the more expansive one of whether the insured's activity was "profit–motivated". The insured's receipt of compensation is one, but not the only, means of proving profit motive. *See State Farm Fire & Cas. Co. v. Drasin,* 152 Cal. App. 3d 864, 869–70, 199 Cal. Rptr. 749, 752 (1984) (insured formed a partnership to acquire mining leases). We agree with Mutual of Enumclaw that part–time employment constitutes a business pursuit, so long as it is both conducted on a regular and continuous basis and motivated by profit. *See, e.g., State Mut. Cyclone Ins. Co. v. Abbott,* 52 Mich. App. 103, 216 N.W.2d 606 (1974) (insured engaged in business as a part–time farrier).

▮ As to the continuity element, Kays had been working for Rodgers for 2 or 3 months before the accident occurred. After the accident, he continued to work for Rodgers for another 5 months. During these periods, Kays reported to Rodgers's farm every weekday morning, although he only worked an average of 4 hours per day. Based on these facts, we conclude that Kays's employment with Rodgers was regular and continuous. We do not believe that an insured must be engaged in a single activity or particular trade or occupation for the business pursuits

exclusion to apply. In addition to Kays's employment, numerous jobs involve performing a variety of tasks. Although Kays performed a variety of tasks for Rodgers, including running wire, fixing a sewer, and repairing a barn, he nevertheless was regularly and continuously employed by Rodgers. We, therefore, decline to characterize Kays's labor as "casual". *See, e.g., MFA Mut. Ins. Co. v. Nye,* 612 S.W.2d 2, 4 (Mo. Ct. App. 1980) (insured mowed lawn for neighbors during summer months). Nor do we view his labor as "temporary", since Kays and Rodgers apparently made no agreement about the duration of their arrangement. *See State Farm Fire & Cas. Co. v. Friend,* 478 So. 2d 1198 (Fla. Dist. Ct. App. 1985) (insured, who had been temporarily laid off from his regular job, took a 1–month, part–time job as a parking attendant, in part, as a favor to a friend).

■ As to the profit motive element, there is no requirement that the insured be motivated *solely* by pecuniary gain. *See Wiley v. Travelers Ins. Co.,* 534 P.2d 1293, 1295 (Okla. 1974). Kays received $7 per hour for the work he performed for Rodgers. In addition, Kays stated that one of the reasons he worked was to "supplement his retirement benefits". Although Kays may have worked for reasons besides profit, earning spending money was a primary motivation. We conclude that Kays's employment was profit motivated.[1]

■ Respondent State Farm contends that since Kays's livelihood did not depend on the income he earned through his employment with Rodgers, it cannot be construed as a business pursuit. In the following cases, the court held that the described activity, although not the insured's major source of livelihood, comprised a business pursuit: *Automobile Underwriters, Inc. v. Hitch,* 169 Ind. App. 453, 349 N.E.2d 271, 274 (1976) (insured reloaded shells at home

---

[1]For an example of a case in which the court found the profit motive lacking, see *Home Ins. Co. v. Aurigemma,* 45 Misc. 2d 875, 257 N.Y.S.2d 980 (1965).

and sold them at his gasoline service station); *Drasin*, 152 Cal. App. 3d at 869–70 (insured formed a partnership to acquire mining leases); *Wiley*, 534 P.2d at 1294 (insured bred, raised, and sold St. Bernard puppies); *see Auto–Owners Ins. Co. v. Corrie*, 102 Ill. App. 3d 93, 429 N.E.2d 883, 884 (1981) (insureds managed laundromat in exchange for rent). *See also Brown v. Peninsular Fire Ins. Co.*, 171 Ga. App. 507, 509–11, 320 S.E.2d 208, 210–11 (1984) (Birdsong, J., dissenting), for discussion. Based on these cases, we hold that the insured's activity need not be undertaken as the major source of livelihood to satisfy either the continuity or profit–motive element.

In light of our holding that the business pursuits exclusion in Mutual of Enumclaw's policy applies to the labor Kays performed for Rodgers, Mutual of Enumclaw had no duty to defend Kays. Therefore, Kays is not entitled to costs or attorney's fees.

The judgment is reversed.

GROSSE, C.J., and FORREST, J., concur.