[No. 65355-1.  En Banc.]

Argued January 28, 1998.     Decided April 2, 1998.

NEOMA STUART, *Respondent*, v. AMERICAN STATES
INSURANCE COMPANY, *Petitioner*.

*Reed McClure,* by *William R. Hickman* and *Mary R. De-Young,* for petitioner.
*Louie V. Delorie, Jr.,* for respondent.

JOHNSON, J. — This case presents the issue of whether a foster home constitutes a "business pursuit" as that term is used in an exclusion in a homeowners insurance policy.[1] Neoma Stuart alleged injury by Jody Collins, a foster child of the insureds, Tom and Patricia McCabe (the McCabes). The McCabes' insurer, petitioner American States Insurance Company (ASI), denied coverage and Stuart sued.

The trial court held the McCabes' foster home was a business pursuit and granted summary judgment to ASI. Stuart appealed and the Court of Appeals reversed and remanded, holding a question of fact exists as to whether the McCabes have a profit motive in operating their foster home. *Stuart v. American States Ins. Co.,* 85 Wn. App. 321, 326, 932 P.2d 697 (1997). We accepted ASI's petition for review and affirm.

## FACTS

In December 1986, the McCabes acquired a license to operate a foster home. They then contracted with the Yakima Valley Farm Worker's Clinic (Clinic) to provide foster care for any children the State or the Clinic might place with them. Over the past 11 years, a total of 12 children have been entrusted to the McCabes' care. The McCabes are reimbursed by the State for the costs associated with caring for the children that are placed in their care, receiv-

---

[1] American States Insurance Company seeks review of this issue only.

ing anywhere from $369 to $870 per child per month, the amount dependent upon the special needs of the child. To be reimbursed for the expenses of their foster children, the McCabes fill out and submit vouchers to the Clinic each month. They do not declare the money they receive as income, nor do they declare their foster children as dependents for income tax purposes.

Before obtaining their foster home license, the McCabes purchased a homeowners insurance policy with ASI. The policy provided:

> [I]f a claim is made or a suit is brought against an insured for damages because of personal injury or property damage caused by an occurrence to which this coverage applies, we [ASI] will: 1) pay up to our limit of liability for the damages for which the insured is legally liable; and 2) provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

Clerk's Papers at 37.[2] The policy, however, excludes from coverage injuries or property damage "arising out of business pursuits of an insured." The exclusion states, in pertinent part:

1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

. . . .

   b. arising out of business pursuits of an insured or the rental or holding for rental any part of any premises by an insured in connection with:

      1) a business owned or financially controlled by the insured or owned by a partnership or joint venture of which the insured is a partner or member . . . .

Clerk's Papers at 39.

---

[2]At oral argument before this court, counsel for ASI indicated that because Jody Collins was a resident of the McCabes' household at the time of the accident, he was an insured under the policy. Oral argument tape 1.

On August 5, 1991, while on an outing with a Clinic employee, Jody Collins struck Stuart with his bicycle. At the time, Jody was a foster child of the McCabes. Stuart filed one claim against Jody for negligence and a separate claim against the Clinic for negligent supervision. Jody tendered his defense to ASI which rejected the request and denied coverage because, "the running of this therapeutic foster home would come under the definition of business as defined by the policy." Clerk's Papers at 38. Jody assigned his claim against ASI to Stuart, who then filed an amended complaint for damages against ASI.

Stuart and ASI moved for summary judgment on the issue of coverage. The trial court granted summary judgment for ASI and denied Stuart's motion. Division Three of the Court of Appeals reversed and remanded the case for trial because a question of fact existed as to whether the McCabes have a profit motive in operating their foster home. *Stuart*, 85 Wn. App. at 326.

## ANALYSIS

When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394, 823 P.2d 499 (1992). That inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c).

This case requires us to interpret an insurance policy and the policy's "business pursuits" exclusion. An insurance policy must have meaning to the average individual. As such, the policy language must be interpreted the way it would be understood by the average person. *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 840-41, 734 P.2d 17 (1987). In interpreting exclusions, we have held exclusions from coverage of insurance are contrary to the fundamental protective purpose of insurance and will not

be extended beyond their clear and unequivocal meaning. *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 915, 631 P.2d 947 (1981). Exclusions should also be strictly construed against the insurer. *Mid-Century Ins. Co. v. Henault*, 128 Wn.2d 207, 213, 905 P.2d 379 (1995).

Four cases from the Court of Appeals have discussed business pursuits exclusions in homeowners insurance policies. *Stoughton v. Mutual of Enumclaw*, 61 Wn. App. 365, 810 P.2d 80 (1991); *Rocky Mountain Cas. Co. v. St. Martin*, 60 Wn. App. 5, 802 P.2d 144 (1990); *Transamerica Ins. Co. v. Preston*, 30 Wn. App. 101, 632 P.2d 900 (1981); *U.S.F.& G. Ins. Co. v. Brannan*, 22 Wn. App. 341, 589 P.2d 817 (1979). *Stoughton* and *Rocky Mountain* set out separate analyses for determining whether a given activity constitutes a "business pursuit." The Court of Appeals in this case followed the *Stoughton* analysis. *Stuart*, 85 Wn. App at 325-26.[3]

In *Stoughton*, Division One concluded a business pursuits exclusion applied to deny coverage to a handyman who injured another while working on a barn. *Stoughton*, 61 Wn. App. at 370-71. Under the analysis in *Stoughton*, an insured's activity is a "business pursuit" if: (1) "the insured conducted the activity on a regular and continuous basis," and (2) "the insured's activity was 'profit-motivated.' " *Stoughton*, 61 Wn. App. at 369. As to the profit motive element, the *Stoughton* court stated there is no requirement the insured be motivated "*solely* by pecuniary gain" and the activity in question "need not be undertaken as the major source of livelihood" to satisfy either element of the test. *Stoughton*, 61 Wn. App. at 370-71.

---

[3]In its petition for review, ASI argues forcefully that "[t]he decision of Division III, and Division II's [sic] *Stoughton* decision, are in direct and irreconcilable conflict with Division I's [sic] *Rocky Mountain* decision . . . . Review should be accepted to clarify for litigants and the courts of appeal which test should be applied . . . ." Pet. for Review at 5-6. Curiously, in supplemental briefing, ASI argues the tests from *Rocky Mountain* and *Stoughton* are *not* in conflict, stating, "[t]he Court of Appeals was wrong when it concluded that the *Rocky Mountain* and *Stoughton* tests were in conflict and could not be reconciled." Supplemental Br. of Pet'r at 6. Regardless, ASI now asserts even if the two tests are in conflict, either test "is met in this case." Supplemental Br. of Pet'r at 8.

In *Rocky Mountain*, an insurance company sought a declaration of noncoverage for an injury sustained by a child who touched a wood-burning stove at his baby-sitter's house. Division Two held baby-sitting was a "business pursuit" and concluded the insurance company was not required to provide coverage under a business pursuits exclusion in the policy. *Rocky Mountain Cas. Co.*, 60 Wn. App. at 10-11. In so holding, Division Two stated an activity is a "business pursuit" if it is "conducted on a regular and continuous basis for compensation." *Rocky Mountain Cas. Co.*, 60 Wn. App. at 7.

In granting summary judgment to ASI, the trial court applied the analysis from *Rocky Mountain*. In reversing, Division Three followed the *Stoughton* analysis, reasoning that application of the *Rocky Mountain* analysis "broadens the base of the policy exclusion because it does not take into consideration a factor that would seem a sine qua non of going into business—making a profit. . . . A profit motive is a necessary consideration in evaluating whether a pursuit is in fact a business." *Stuart*, 85 Wn. App at 326. The Court of Appeals reasoned that broadening the exclusion was counter to this court's mandate that exclusions in insurance policies be strictly construed against the insurer. *Stuart*, 85 Wn. App at 326.

■ ■ The McCabes' homeowners insurance policy does not define "business pursuit," but defines "business" as a "trade, profession or occupation." Clerk's Papers at 38.[4] Because the term "business pursuit" is undefined, it should be given its " 'plain, ordinary and popular' meaning." *See Lynott v. National Union Fire Ins. Co.*, 123 Wn.2d 678, 691, 871 P.2d 146 (1994) (quoting *Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 73, 549 P.2d 9 (1976)). In order to determine the plain, ordinary and popular meaning of "business pursuit," we may look to both legal and standard dictionaries. *See*

---

[4]Only a portion of the insurance policy has been included in the record. The definitions section which is found in most insurance policies has not been included. We glean the definition of "business" from a letter from ASI to Mr. McCabe denying coverage for Stuart's injuries.

*Lynott*, 123 Wn.2d at 691-92. It only makes sense to understand the "plain, ordinary, and popular meaning" of the term prior to adopting the proper analysis to determine when an activity constitutes a "business pursuit."

Standard dictionaries do not define "business pursuit" as a term unto itself. While the term "business" is defined in the policy, the term "pursuit" is not. The term "pursuit" is defined in pertinent part as "an activity that one pursues or engages in seriously and continually or frequently as a *vocation or profession* or as an avocation < except in the arts, letters, or *other unprofitable* . . . > : a way of life: *occupation*." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1848 (1986) (emphasis added). BLACK'S LAW DICTIONARY provides a precise definition of the term "business pursuit," stating that within the meaning of a homeowners insurance policy exclusion, the term "denotes continued or regular activity for purpose of earning a livelihood such as a trade, profession, or occupation, or a commercial activity." BLACK'S LAW DICTIONARY 200 (6th ed. 1990) (citing *Industrial Indem. Co. v. Goettl*, 138 Ariz. 315, 318-19, 674 P.2d 869, 872 (1983)).

We also receive guidance from our previous cases. In *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 854 P.2d 1072 (1993), we held an adult family home violated a protective covenant that property would be used only for single family residential purposes. Central to our holding was that the defendant operated the home for a *profit* and for her main source of income. We agreed with the analysis of the Court of Appeals in *Hagemann v. Worth*, 56 Wn. App. 85, 782 P.2d 1072 (1989):

> "While the Worths' purpose in providing room, board, and services may be charitable in nature, as reflecting their loving and compassionate concern for the elderly, *they are nevertheless making a living providing this service.* . . . We conclude their activity in providing foster or boarding house care constitutes a business."

*Mains Farm Homeowners Ass'n*, 121 Wn.2d at 821 (emphasis added) (quoting *Hagemann*, 56 Wn. App. at 90-91).

■ In light of the general rules of construction of insurance policies, exclusions found within those policies, definitions in legal and standard dictionaries and previous case law, the *Stoughton* analysis represents the best approach. The *Stoughton* analysis is in accord with the plain, ordinary and popular meaning of "business pursuit." The legal definition of "business pursuit," the standard dictionary definition of "pursuit," and the policy's definition of "business" all contemplate that the insured's activity be profit motivated in order to earn a "livelihood" or to be the insured's "profession or occupation." The *Rocky Mountain* analysis, which requires only compensation, is inconsistent with our holding that insurance exclusions be strictly construed against the insurer. Additionally, the *Stoughton* analysis is in accord with the general rule in a majority of other jurisdictions. *See* David J. Marchitelli, Annotation, *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 35 A.L.R.5TH 375, 411 (1996). Regardless, *Rocky Mountain* would be inapplicable to the factual situation here. In *Rocky Mountain*, the Court of Appeals concluded that baby-sitting was a "business pursuit." In this case, baby-sitting is an explicit exception to the business pursuits exclusion in the insurance policy. We approve of the *Stoughton* analysis and hold that in order to constitute a business pursuit, the McCabes' foster home must (1) be conducted on a regular and continuous basis, and (2) be profit motivated. It is not necessary that profit be the McCabes' *sole* motivation in operating the foster home. Nor is it necessary that the foster home be the major source of livelihood for Mr. and Mrs. McCabe. All that is required is that the activity be regular and continuous and that a profit motive exist in conducting the activity. Compensation may be used as a method of establishing profit motive but it does not establish, per se, a profit motive exists.

The McCabes have been foster parents throughout the past 12 years and, thus, on a regular and continuous basis. The Court of Appeals concluded remand for trial was nec-

essary because "[i]t is unclear whether there was a profit motive." *Stuart*, 85 Wn. App. at 326.

ASI argues the McCabes are motivated by profit in operating their foster home because they are not required to declare their reimbursement as income and therefore have benefited financially from their provision of foster care services. ASI also argues the money the McCabes receive is not actually reimbursement because the amount per child varies and "the McCabes' foster care activities [are] a business-like activity, very different from traditional child-raising activities performed by a family." Supplemental Br. of Pet'r at 13. In that regard, ASI points out that the McCabes had a written contract with the Clinic and they were required to be licensed and undertake special training to handle the needs of the children for which they were caring. Lastly, ASI contends the McCabes "presented no proof to the trial court that the compensation they received only covered their expenses. Under the circumstances, it is apparent that the McCabes enjoyed financial gain from their activities." Supplemental Br. of Pet'r at 13-14.

Stuart asserts the McCabes' activities as foster parents are not profit motivated. Both Mr. and Mrs. McCabe have been employed full-time outside of the home. As Stuart points out, "[t]he record before the court is devoid of any indication that the McCabe's [sic] status as licensed foster parents or activity of operating a foster home was profit motivated." Br. of Appellant at 9. Instead, Stuart asserts, "the record indicates that the motivation for being foster parents was and is a desire to enrich the lives of the foster children that they take into their home." Br. of Appellant at 9.

■■ ■■ We hold the trial court incorrectly granted summary judgment for ASI. While ASI is correct that the McCabes had to be licensed by the State and have a contractual relationship with the Clinic to provide foster care, these acts are insufficient to support ASI's contention that the McCabes' activity as foster parents was "business-like"

and "very different from traditional child-raising activities performed by a family." Nor can we agree that "it is apparent that the McCabes enjoyed financial gain from their activities." In that regard, we note the somewhat limited compensation schedule for foster parents set out in the WASHINGTON ADMINISTRATIVE CODE. *See* WAC 388-70-042 (payment standards for regular foster family care); WAC 388--70-048 (payment standards for children with special needs). However, because counsel for Stuart conceded remand was necessary to determine whether the McCabes have a profit motive in operating their foster home, we cannot conclude that summary judgment is, at this point in the proceedings, appropriate for Stuart.

At the Court of Appeals, Stuart argued she was entitled to reasonable attorney fees incurred in bringing her action for coverage. *See Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991) (an insured which is compelled to assume the burden of legal action to obtain the benefit of its insurance policy is entitled to recover attorney fees regardless of whether the duty to defend is at issue). Because we affirm the Court of Appeals and remand the case for trial, we hold Stuart is entitled to attorney fees only if she prevails on remand.

Affirmed.

DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.