[No. 20416-2-III. Division Three. April 18, 2002.]

ROBERT LEANDERSON, ET AL., *Appellants*, v. FARMERS INSURANCE
COMPANY OF WASHINGTON, *Respondent.*

*Roland L. Skala* and *Richard Burchak* (of *Weeks & Skala*), for appellants.

*Diehl R. Rettig* (of *Rettig, Osborne, Forgette, O'Donnell, Iller & Adamson, L.L.P.*), for respondent.

BROWN, C.J. — While baby-sitting, Crystal Leanderson accidentally started a fire at Timothy and Margaret Hawkins' home, which was insured by Grange Insurance Association (Grange). After Grange paid the loss, it demanded subrogation from the Leandersons, who were insured by Farmers Insurance Company of Washington (Farmers). Eventually, Farmers denied coverage. The Leandersons confessed judgment to Grange in exchange for a covenant not to execute. Then, Grange filed suit in the Leandersons' name to contest Farmers' coverage denial. At summary judgment, the trial court decided Farmers' business pursuits exclusion applied and dismissed the complaint. Because the trial court did not err in dismissing this suit based upon Farmers' exclusions for business pursuits and home care, we affirm.

## FACTS

Mr. and Mrs. Hawkins hired Crystal, age 16, to baby-sit their three children during the summer of 1999. Beginning in mid-June, Crystal worked an average of 8 to 10 hours a day, four to five days a week. The Hawkins paid Crystal roughly $25 per day. In mid-July while preparing lunch, Crystal accidentally started a fire in the Hawkins' kitchen. Grange, the Hawkins' insurance company, paid the claim. Grange sought subrogation from Crystal and her parents, who were insured by Farmers.

Regarding liability, Mr. and Mrs. Leanderson's policy partly provides:

We do *not* cover **bodily injury** or **property damage**:

1. Arising from or during the course of business pursuits of an insured.

But we *do* cover:

. . . .

(b) part-time services performed directly by an insured under age 21 who is a resident of your household.

"Part-time" means no more than 20 hours per week.

Clerk's Papers (CP) at 80. "Business pursuits" is undefined. CP at 80. In an endorsement amending personal liability, the policy provides:

We do not cover **bodily injury** or **property damage**:

Resulting from the legal liability of any **insured** because of home care services provided to any **person** on a regular basis by or at the direction of:

a. any **insured**;

b. any employee of any **insured**;

c. any **person** actually or apparently acting on behalf of any **insured**.

Regular basis means more than 20 hours per week.

Home care services means any activity in which any **insured** provides care for other **persons** on a regular basis.

This exclusion does not apply to:

a. Home care services provided to the relatives of any **insured**.

b. Occasional or part-time home care services provided of any **insured**.

CP at 89.

Farmers initially defended with a reservation of rights and then, based upon the above policy language, withdrew. The Leandersons eventually confessed judgment for $23,605.10 in exchange for a covenant not to execute. Then, this suit was filed against Farmers for breach of contract, damages, and bad faith. After both parties moved for summary judgment, the trial court dismissed the complaint. It interpreted the business pursuits and home care provisions to exclude coverage because Crystal was not a part-time worker and was engaged in home care services provided on a regular basis. Further, the court concluded Mr. and Mrs. Leanderson were not separately insured under the policy. This appeal followed.

## ANALYSIS

### A. Coverage Exclusions

The issue is whether, as a matter of law, the trial court erred in granting Farmers' request for summary judgment dismissal by concluding the business pursuit and home care exclusions excluded coverage.

We review an order granting summary judgment de novo. *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 324-25, 971 P.2d 500 (1999). "It must consider the facts and all reasonable inference from those facts in the light most favorable to the nonmoving party." *Id.* at 325 (citing *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992)). The moving party is entitled to judgment as a matter of law if there is no genuine issue of material fact and reasonable minds could reach but one conclusion. *Id.* at 325; CR 56(c).

The Leandersons contend the business pursuit exclusion in their policy does not apply to Crystal's baby-sitting. Insurance policies are construed as contracts, meaning they are interpreted as a matter of law. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997). The language of an insurance contract is interpreted the way it would be understood by the average insurance purchaser. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). Undefined terms are given their ordinary and common meaning, not their technical, legal meaning. *Peasley*, 131 Wn.2d at 424 (citing *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994)). Further, exclusions from coverage of insurance "will not be extended beyond their clear and unequivocal meaning." *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998) (citing *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 915, 631 P.2d 947 (1981)).

If the language is clear and unambiguous, it must be enforced as written. *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1*, 112 Wn.2d 1, 10, 771 P.2d 701 (1989). The common "business pursuit" insurance exclusion is

unambiguous. *Transamerica Ins. Co. v. Preston*, 30 Wn. App. 101, 104, 632 P.2d 900 (1981).

■ In *Stuart*, our Supreme Court reviewed four appellate cases discussing business pursuit exclusions. *See Stoughton v. Mut. of Enumclaw*, 61 Wn. App. 365, 810 P.2d 80 (1991); *Rocky Mountain Cas. Co. v. St. Martin*, 60 Wn. App. 5, 802 P.2d 144 (1990); *Transamerica Ins. Co.*, 30 Wn. App. 101; *U.S.F.&G. Ins. Co. v. Brannan*, 22 Wn. App. 341, 589 P.2d 817 (1979). The court held in order to constitute a business pursuit, the activity in question "must (1) be conducted on a regular and continuous basis, and (2) be profit motivated." *Stuart*, 134 Wn.2d at 822.

■ Here, Crystal was employed by the Hawkins for a set period of time. While her work was for a set time, it was still regular in that she had a set schedule for the summer and it was continuous throughout the agreed-upon time period. Crystal's baby-sitting was her "summer job" and is distinguished from sporadic baby-sitting. The Leandersons' policy distinguishes baby-sitting that is infrequent from baby-sitting that is regular and continuous by expressly providing coverage if baby-sitting is "part-time services performed directly by an insured under age 21." CP at 80. Thus, reasonable minds could reach one conclusion that when Crystal started the fire, she was baby-sitting on a regular and continuous basis.

■ We must next decide whether the baby-sitting was profit motivated. In *Stuart*, the court analyzed whether providing foster care was profit motivated. The court found favor with the *Stoughton* analysis, which focused on whether the activity was done to earn a "livelihood" or considered the insured's "profession or occupation." *Stuart*, 134 Wn.2d at 822. The court reversed the trial court's summary judgment and remanded on the issue of foster care and profit motivation. *Id.* at 824.

This case is distinct from *Stuart* because foster care and baby-sitting are distinguishable activities. Crystal's employment with the Hawkins was her job for the summer, similar to youth who work in restaurants, mow lawns, or work in

retail during their summer break. While these jobs probably are not these individuals' professions, they are their occupation for the summer. Similarly, Crystal's employment for the Hawkins would be considered her summer occupation. Further, Crystal testified that her purpose in baby-sitting was to earn money. Therefore, while there was a fact question of the foster parents' motive in *Stuart*, reasonable minds could reach but one conclusion here that Crystal's baby-sitting was profit motivated. The trial court did not err in granting summary judgment on this issue.

■ The Leandersons next contend Crystal's baby-sitting was only part-time; thus, the business pursuit exclusion does not apply to her. They contend her total baby-sitting hours for the summer should be divided by 12, resulting in a total yearly average of hours worked. However, the policy defines part-time as meaning "no more than 20 hours per week." CP at 80. This language is clear and unambiguous. As such, it must be enforced as written. *Wash. Pub. Util. Dists.' Utils. Sys.*, 112 Wn.2d at 10. Crystal worked between 8 to 10 hours a day, four to five days a week. This averages over 20 hours per week. Thus, her employment would not be considered part-time.

■ Farmers urges an additional ground to affirm by arguing coverage was also excluded under the home care services exclusion. *See Wolstein v. Yorkshire Ins. Co.*, 97 Wn. App. 201, 206, 985 P.2d 400 (1999) (respondent permitted to make additional argument without filing a notice of cross review when urging additional grounds for affirmance rather than affirmative relief). Although Farmers makes a good argument regarding the cumulative effect of the home care exclusion, it appears the trial court focused on the business pursuits exclusion when granting summary judgment. In light of our discussion thus far, which approves the trial court's reasoning, we need not reach Farmers' additional argument. *State v. Jenkins*, 100 Wn. App. 85, 93, 995 P.2d 1268, *review denied*, 141 Wn.2d 1011 (2000).

## B. Separate Coverage

The issue is whether the trial court erred in deciding the Leandersons' policy did not create separate coverage for Mr. and Mrs. Leanderson. The standard of review remains the same; an order granting summary judgment is reviewed de novo and will be upheld if there is no genuine issue of material fact and reasonable minds could reach but one conclusion. *Soproni*, 137 Wn.2d at 324-25; CR 56(c).

 The Leandersons' policy provides: "This insurance applies separately to each **insured**. This condition does not increase our limit of liability for any one **occurrence**." CP at 81. Focusing on the term "an insured" in the policy, the Leandersons contend the policy creates separate insurance contracts for each insured. They further cite *Federated American Insurance Co. v. Strong*, 102 Wn.2d 665, 689 P.2d 68 (1984) for the proposition that if one insured is not negligent then coverage is still available to that insured.

Washington case law rejects this argument. Specifically, Division One of this court held:

> In *Unigard* [*Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wn. App. 261, 579 P.2d 1015 (1978)] and *Strong*, unlike in the present case, coverage and exclusion are expressed in terms of "*the* insured." (Italics ours.) The language in the exclusion clauses in *Unigard* and *Strong* are significantly different from the provision in this case. In the instant case, coverage and exclusion are expressed in terms of *an* insured. Here, the exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by *an* insured, which includes anyone insured under the policy.

*Farmers Ins. Co. of Wash. v. Hembree*, 54 Wn. App. 195, 200, 773 P.2d 105 (1989) (citing *Travelers Ins. Co. v. Blanchard*, 431 So. 2d 913 (La. Ct. App. 1983)).

Similarly, the Leandersons' policy uses the term "an insured" rather than "the insured." CP at 80. Therefore, the exclusion is not restricted to Crystal's acts, but broadly excludes coverage for all injury or damage caused by any insured under the policy.

Affirmed.

SWEENEY and KURTZ, JJ., concur.

Review denied at 148 Wn.2d 1002 (2003).