**NORTH PACIFIC INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Michael KELLEY; Dixie Kelley, Defendants–Appellees.**

**No. 04–36110.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 2006.

Filed Nov. 30, 2006.

---

Mark P. Scheer, Nathan Furman, Esq., Scheer & Zehnder LLP, Seattle, WA, for Plaintiff–Appellant.

Bryan G. Evenson, Esq., Thorner Kennedy & Gano PS, Yakima, WA, Daniel E. Huntington, Richter Wimberley, PS, Spokane, WA, for Defendants–Appellees.

Before: SCHROEDER, Chief Circuit Judge, TALLMAN and BEA, Circuit Judges.

## MEMORANDUM *

The district court properly granted summary judgment to Michael and Dixie Kelley. The "unloading provision" within the farm liability insurance policy issued by North Pacific Insurance Company ("North Pacific") is ambiguous because the phrase, "place where it is finally delivered," can reasonably mean two different things. *See McDonald Indus. v. Rollins Leasing Corp.*, 95 Wash.2d 909, 631 P.2d 947, 949

(1981) ("Coverage is considered ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." (internal quotation marks omitted)). The phrase can be interpreted as meaning that the cattle were not finally delivered until they reached "a location where they were safely contained," or alternatively it can be interpreted to mean that "delivery was complete when the cows' hooves hit the pavement." Having determined that the phrase, "the place where it is finally delivered," is ambiguous, we must assign it the meaning more favorable to the Kelleys, as the insured. *See id.* ("It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage.").

North Pacific also argues that the accident is excluded from coverage because of the more general "use exclusion." This exclusion provides that the insurance does not apply to bodily injury "arising out of the ... use ... of any ... 'auto' ... owned or operated by ... any 'insured.' " However, "[i]n Washington, an accident arises out of the use of a vehicle if the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury." *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wash.2d 157, 856 P.2d 1095, 1097 (1993) (en banc) (internal quotation marks omitted). Therefore, this exclusion does not apply because the "use" of the trailer was too indirectly linked to the incident causing bodily injury.

North Pacific's appeal of attorney's fees is contingent on its appeal of the district court's grant of summary judgment. Therefore, because we affirm the district

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

court's grant of summary judgment, we also affirm the award of attorney's fees.

**AFFIRMED.**

BEA, Circuit Judge, dissenting:

I respectfully dissent. There is a triable issue of material fact on the question whether Kelley's cattle were being "unloaded" within the meaning of the exclusion on Kelley's farm liability policy. This issue of fact should be decided by a jury.

With due respect to the majority, not every provision of an insurance policy which excludes coverage must be interpreted in favor of the insured. First, we must attempt to interpret it accurately, consistent with canons of construction and the evidence adduced. Then, only if such efforts yield ambiguous or vague interpretations can we reach for the rule that interprets in favor of the insured. To do otherwise puts the cart in front of the heifer. The term "finally delivered" is neither ambiguous nor vague. But it does require interpretation to determine whether it applies to the circumstances of this case: were the cattle "finally delivered" if a gap existed between the trailer and the unloading chute? We can provide just that interpretation by looking to Washington law and letting the jury determine, as a question of fact, the terms of the contract, and whether Kelley had performed: were the cattle "finally delivered"?

Kelley's policy excluded coverage from accidents involving "loading or unloading", which in turn was defined as "the handling of property ... while it is being moved from [a] ... motor vehicle to the place where it is finally delivered." How to interpret this term, "finally delivered"? Without evidence of a written contract, nor testimony of precise terms which locate the final delivery point between Kelley and the Hermiston Livestock Company, we must look to the course of dealing, if any, between the parties, and the usage of trade among those who deliver cattle and those who receive cattle. Washington Revised Code § 62A.1–205, "Course of dealing and usage of trade", is Washington's adoption of the Uniform Commercial Code (UCC). It provides:

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts....

(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

. . .

(5) An applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of the performance.

Wash. Rev.Code § 62A.1–205. The comments to the UCC illuminate the purpose of these provisions:

[T]he meaning of the agreement of the parties is to be determined by the language used by them and by their action, read and interpreted in the light of commercial practices and other surrounding circumstances. The measure and background for interpretation are set by the commercial context which may explain

and supplement even the language of a formal or final writing.

Wash. Rev.Code Ann. § 62A.1–205 UCC cmt. 1 (West 2003). Whether a party has put forward sufficient evidence to establish a trade usage is a question of fact for the jury. *Colley v. Bi–State, Inc.,* 21 Wash. App. 769, 586 P.2d 908, 911 (1978).

Here, whether the cattle were "finally delivered" when Kelley backed his truck up to the unloading chute, but left a two-and-a-half to three-foot gap between his truck and the fenced area on both sides of the chute (which fending would have contained the cattle from the public area) is a question of fact determined by the parties' course of dealing and the usage of trade, and should be answered by a jury. Indeed, on this issue there was evidence in the record pointing in both directions. Witness Burke Perkins testified that Kelley "didn't get clear back to where he should have" and that the yard man told Kelley, "sir, you're going to have to get closer, you're not close enough." Perkins Dep. at 5–6.[1] On the other hand, witness James S. Brooks testified that it is "not uncommon" to "unload[ ]" two-and-a-half to three feet from the unloading area and for the owner to stand in the gap. Brooks Dep. at 17. Given the divergent evidence on whether Kelley had "finally delivered" the cattle when he left a gap between his truck and the unloading chute, the district court should not have granted a motion for summary judgment.

I also find the majority's analysis of *Mutual of Enumclaw Insurance Co. v.*

*Jerome* to be unpersuasive. 122 Wash.2d 157, 856 P.2d 1095 (1993) (en banc). In *Jerome,* coverage was denied because no portion of the vehicle in which Jerome launched the firecrackers came in contact with Jerome or affected where the firecrackers landed. The court reasoned that coverage for "the ownership, maintenance, or *use* of a covered vehicle" was not invoked since nothing about the *use* of the *vehicle* was in any way causative of the accident. 856 P.2d at 1096 (emphasis added). Unlike *Jerome,* the placement of the truck here was causative of the escape of the animals.[2] Had the truck been backed closer to the chute and into the area bounded by the pipe fence, the animals would not have escaped.

For the foregoing reasons, I respectfully dissent.

*This case was not selected for publication in the Federal Reporter*

1. No hearsay objection was made to Perkins's testimony regarding the yard man's statements. *See id.* But even if a hearsay objection had been made, the testimony is not hearsay. It was not introduced to prove the truth of the matter asserted. Rather, it serves as evidence of an oral specification between contracting parties as to what constituted "final delivery" at the stock yard.

2. The paradigm hypothetical case of what was *not* contributory negligence was the plaintiff's car parked next to the curb, but facing the wrong way in violation of a statute, when it was demolished by the defendant's negligent act. The hypothetical helps distinguish a *condition* from a *cause.*